## THE STATE v. GRAYOR, *Appellant.*

1. **Criminal Law**: PRACTICE: MURDER: EVIDENCE. On a trial for murder, where the evidence shows that the deceased was engaged at his work and making no demonstration at the time he received the fatal blow, evidence of a previous difficulty between him and the defendant, six hours before, is inadmissible as tending to mitigate the offence, and this is the case although the deceased may have used insulting language toward the defendant at the time of the homicide.

2. ——— : ——— : INSTRUCTION. An instruction that " if from the evidence the jury believe and find * · * * that defendant did * * * by means and use of a dangerous weapon, to-wit : a wooden club, feloniously kill," etc., is not objectionable upon the ground that it assumes that the club used was a dangerous weapon.

3. ——— : ——— : ———. Where an instruction as to reasonable doubt on the whole case is given, an instruction that if the jury " find from the evidence that the defendant is guilty of some grade of offence and they entertain a reasonable doubt as to which degree of offence defendant is guilty, they will acquit him of the higher degree and convict of the lower, " is properly refused. It is self-contradictory.

4. ——— : ——— : DEFENDANT AS WITNESS. Where a defendant becomes a witness for himself, his conduct, demeanor and appearance on the stand become a subject of fair observation the same as that of any other witness.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*L. Frank Ottofy* for appellant.

(1) Where a homicide is committed with an instrument not recognized by the statute as a "deadly weapon" its deadly character must be alleged in the indictment. *State v. Hoffman*, 78 Mo. 257. (2) It is proper to show the incentive to the provocation which aroused the passions, and it is a question of fact for the jury in a doubtful case whether a party acted under the influence of the passion, even though an interval had occurred. 2 Starkie on Evid., *525; *State v. Testerman*, 68 Mo. 415; Wharton on Crim. Law [7 Ed.] sec. 990. (3) By "malice aforethought" is meant an intent actually to take the life of the slain, fully formed and existing in the mind of the slayer at some time, however short, before the act of killing was done. *State v. Wieners*, 66 Mo. 21; *State v. Ellis*, 74 Mo. 211. (4) It is the duty of the court to declare, as a matter of law, whether the provocation sought to be established is such as will mitigate the homicide. *State v. Ellis*, 74 Mo. 220. (5) If an assault (misdemeanor) only is intended, with a weapon not in itself dangerous or deadly, and the assailant slay the assailed, there being no intent to kill, it is murder in the second degree, or manslaughter. Wharton on Criminal Law [7 Ed.] secs. 1084–1196, and cases cited; 2 Bishop on Criminal Law, sec. 692; *State v. Holme*, 54 Mo 162; *State v. Wieners*, 66 Mo. 21. (6) If a reasonable doubt exists as to the grade of offence, the jury should acquit of the higher and convict of the lower. Wharton on Criminal Law [7 Ed.] sec. 710 and cases cited; *The State v. Gonce*, 79 Mo. 609. (7) When there are extenuating circumstances,

the weapon not being what is denominated in law as a deadly weapon, there must be proof of malice. *The State v. Alexander*, 66 Mo. 159; *The State 'v. Curtis*, 70 Mo. 601. (8) When the state's attorney makes a statement of material facts not proved, the same being unwarranted by the evidence and prejudicial to the defendant's cause before the jury, it is a good ground for a reversal. *The State v. Vorback*, 66 Mo. 167–8; *The State v. Kring*, 64 Mo. 591.

*John C. H. Stevenson* also for appellant.

(1) The court erred in giving the instruction as to manslaughter in the third degree. In it was the following language: "By means and use of a dangerous weapon, to-wit, a wooden club." That is a statement by the court that the instrument used in this case was a dangerous weapon, and is error because: (*a*) Whether or not the weapon used is a dangerous one, is a question of fact to be passed upon by the jury, and not one of law for the court. *State v. Nueslein*, 25 Mo. 111; *State v. Harper*, 69 Mo. 425; 1 Wharton on Crim. Law [9 Ed.] 1885, sec. 645*d*, p. 587; *Skidmore v. State*, 43 Tex. 93; *Shadle v. State*, 34 Tex. 572; *U. S. v. Small*, 2 Curtis C. C., 241, 243. (*b*) The language of the instruction, "by means and use of a dangerous weapon, to-wit, a wooden club," assumes the existence of two facts, *i. e.*, that the instrument used was a dangerous weapon, and that the instrument used was a wooden club. It misleads the jury, and withdraws from their inquiry material facts. *Thompson v. Botts*, 8 Mo. 710; *Sigerson v. P. & A.*, 13 Mo. 620. (*c*) It is a comment upon the evidence. *State v. Dunn*, 18 Mo. 419; *State v. Cushing*, 29 Mo. 215. (*d*) It instructs the jury upon a matter of fact, and is, therefore, error. 1 R. S., Mo. 1879, p. 321, sec. 1920. (*e*) Whether a weapon was, under the circumstances, dangerous, is a question of

fact to be determined by all the circumstances of the case, especially by the mode of use. 1 Wharton on Crim. Law [9 Ed.] 1885, sec. 645*d*, p. 587, and cases cited. (*f*) It assumes a contested fact and is, therefore, bad. *State v. Wheeler*, 79 Mo. 366. (2) A deadly weapon is one likely to produce death or great bodily injury. 2 Bishop on Crim. Law [7 Ed.] sec. 680, p. 381; 1 Wharton on Crim. Law [9 Ed.] sec. 645*d*, p. 587. Dangerous weapon is a milder term than deadly weapon, yet otherwise of the same meaning. Bishop Stat. Crimes [2 Ed.] sec. 320.

*B. G. Boone*, Attorney General, for the state.

(1) Evidence of the former difficulty was properly excluded. *State v. Ramsey*, 82 Mo. 133; *People v. Edwards*, 41 Cal. 640; *State v. Jackson*, 12 La. Ann. 679. (2) The instruction which told the jury that abusive and insulting words or degrading epithets applied and addressed by the slain to the slayer, constituted a sufficient cause of provocation to reduce the grade of the crime is erroneous and was not authorized by the facts in this case. *Murray v. Boyne*, 42 Mo. 172; *State v. Griffin*, 87 Mo. 608; 2 Bish. Cr. L. [5 Ed.] sec. 40, and cas. cit. ; Whar. Cr. L. [4 Ed.] sec. 985; *Brasswell v. State*, 42 Ga. 613; *People v. Turley*, 50 Cal. 469; *Williams v. State*, 3 Heisk. 376. It may be admitted by the state that the instruction as to manslaughter is erroneous, and still defendant has no cause to complain. He was indicted for murder in the first degree, the jury was properly instructed, and found him guilty as charged. Under this state of facts he will not be heard to complain, although an erroneous instruction for a lower grade of homicide was given. *State v. Talbott*, 73 Mo. 347–353 ; *State v. Smith*, 80 Mo. 516–519. (3) The attorneys for the state, in their arguments to the jury, did not misstate the law or the facts and the defendant was not prejudiced and cannot complain.

*State v. Stark*, 72 Mo. 37 ; *State v. Mallon*, 75 Mo. 355 ; *State v. Hoffman*, 78 Mo. 256 ; *State v. Ramsey*, 82 Mo. 133.

BLACK, J.—The defendant was indicted for killing Berry Evans. He was convicted of murder in the first degree. From the evidence for the state it appears the defendant and deceased were employed at livery stables in St. Louis which were under the same management. One stable was situate on the east and the other on the west side of the same street. About eight o'clock on the day of the homicide, the deceased was engaged in front of the east stable hitching a horse to a buggy. The defendant led a pair of horses from the west to, and into, the east stable, and in so doing this passed the deceased. He turned the horses around on the inside of the stable and gave the halter straps to Mr. Benjamin with a request to hold them until he got the harness. Defendant then went into the harness room, which was close at hand, got a stick three or four feet long and two or three inches thick, and with it hit the deceased on the head, then on the body and raised the club to strike the third blow, when bystanders interfered. The first blow rendered the deceased senseless. Defendant testified that as he passed with the horses the deceased said : "Oh, yes, d—d son-of-a-bitch ; I fixed you last night." The evidence of other witnesses tends to show that no such remarks were made. Defendant also testified that he was angry because of the words spoken to him, and because of a previous difficulty between them ; that he had no intention to kill Evans, or do more than give him a good lick ; that Evans was bending over and raised up as the blow fell, so that it took effect on the head and not on the body, as was intended. On this evidence the court instructed as to murder in the first and second and manslaughter in the third degree.

1.   The evidence shows these parties were room

mates, and that on the morning of the homicide defend-
ant had a fresh scar or wound on the forehead. He also
offered to show in connection with this evidence that
they quarreled on the previous evening, and that about
two o'clock in the night, deceased went into their room
and struck him with a whip while asleep, inflicting the
wound. This evidence was excluded. In 2 Bishop on
Criminal Law, section 711, the author says: "Another
consideration applicable in all cases is, that if the pas-
sion had time to cool, the killing is not reduced to man-
slaughter, though in fact the passion had not cooled."
And in the next section it is stated: "The length of
time necessary for cooling has never been made absolute
by rule; * * * but some cases have occurred which
shed light on this point. Thus if two men fall out in
the morning and meet and fight in the afternoon, and
one of them is slain, this is murder; for there was time
to allay the heat and their after meeting is of malice.
And an hour seems to have been deemed sufficient."
Here there is no evidence of any intervening difficulty
between the parties; the deceased was engaged at his
work, making no demonstrations, and defendant ap-
peared from behind and dealt the fatal blow. At least
six hours intervened from the time of the last previous
difficulty. Even if the deceased made use of the alleged
words, the previous difficulty between the parties could
not in the least mitigate the offence, and the evidence
was properly excluded.

2. The instruction as to manslaughter in the third
degree is, "if from the evidence the jury believe and
find, that at the, etc., the defendant did, in the heat of
passion, and without a design to effect death, by means
and use of a dangerous weapon, to-wit: a wooden club,
feloniously kill Berry Evans, as charged in the indict-
ment, and that the killing was not justifiable or excus-
able, then," etc.

The complaint made to this instruction is that the

court by the use of the words, "by means and use of a dangerous weapon, to-wit: a wooden club," told the jury the club used was a dangerous weapon, and did not leave it as a question of fact for them to determine whether or not the club was a dangerous weapon. We do not so understand the instruction. It starts out by saying if the jury believe and find, and this runs through the entire instruction. That a wooden club was used is not disputed or doubted. The instruction left it as a fact for the jurors to find whether the club was a dangerous weapon.

3. The court gave the usual instruction as to reasonable doubt, on the whole case, and refused to instruct "that if they find from the evidence that the defendant is guilty of some grade of offence, and if they entertain a reasonable doubt as to which degree of offence the defendant is guilty, they will acquit him of the higher degree and convict him of the lower." There was no necessity for any other further instruction on the subject than had already been given by the court. Under the instruction given, if the jury had a reasonable doubt as to defendant's guilt of murder, then they were bound to pass to consideration of the offence of manslaughter, and if they had a reasonable doubt of his guilt of that offence they could do nothing but acquit. It is difficult to understand the refused instruction. The jury could not find the defendant guilty of any grade of offence and at the same time have and entertain a reasonable doubt as to his guilt of that grade of offence. The instruction is self-contradictory, and was properly refused.

4. Complaint is made that the attorney for the state, in his closing argument to the jury, misstated the evidence of the witness, Martin. He alluded to the testimony of this witness as contained in the deposition taken before the coroner. The defendant put this deposition in evidence, and an examination of the deposition shows

that the attorney did not misstate the evidence, but it fully bears out his assertions. As to the other remarks of the attorney we see nothing in them to warrant or justify a reversal of the judgment. The defendant became a witness for himself, and his conduct, demeanor, and appearance on the stand became a subject of fair observation, as much so as that of any other witness.

The judgment in this case must be affirmed, and it is so ordered. All concur.

| 89 | 607 |
| 100 | 324 |

| 89 | 607 |
| 104 | 548 |
| 105 | 23 |
| 44a | 582 |

| 89 | 607 |
| 109 | 270 |

| 89 | 607 |
| 150 | 225 |