240 S.W.2d 909 (1951)
PETTIS
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 42093.
Supreme Court of Missouri, Division No. 1.
June 11, 1951.
Rehearing Denied July 9, 1951.
*910 Mattingly, Boas & Richards, Lloyd E. Boas, St. Louis, for appellant.
Louis E. Miller, Miller & Landau, B. Sherman Landau, St. Louis, for respondent.
HYDE, Judge.
Action for damages for personal injuries received by plaintiff in a collision between defendant's bus and the truck in which he was riding. Verdict was for $25,000.00 from which plaintiff remitted $6,500.00. Defendant appealed from the judgment of $18,500.00. Defendant contends the Court should have directed a verdict for it; and also alleges error in permitting certain facts to be included in hypothetical questions to plaintiff's doctors, in improper argument of plaintiff's counsel, and excessive verdict.
Defendant contends that plaintiff failed to make a jury case, claiming that plaintiff relied on the testimony of only one witness (Kuchenbuch) and that his testimony was contradictory and self-destructive, citing Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644 and similar cases. Kuchenbuch was the driver of an asphalt truck of the City of St. Louis and foreman of a street patching crew of which plaintiff was a member. The crew had finished their day's work and Kuchenbuch was driving the truck south on Kingshighway, going back to the city asphalt plant. The other crew members had left the truck before the collision and plaintiff was sitting alone (facing north) on a two by eight board across the top of the truck bed, back of the cab, when the truck reached the intersection with Manchester and stopped for a red light. Defendant's bus stopped at a bus stop at this intersection, behind the truck, and some of its passengers got off there. When the green light came on, other cars stopped there started south ahead of the truck. The truck also proceeded south over the Kingshighway viaduct, which was about three blocks or 1000 feet long. About half way across, the bus caught up with the truck and started to pass it, but the back part of the bus struck the side of the truck near the back of the front fender and plaintiff was injured. It was defendant's theory that the truck was being eased over toward the center of the street because the driver intended to make a left turn one block south of the south end of the viaduct, to go to the asphalt plant on DeTonty Street. Plaintiff's theory was that the bus cut back west too soon in trying to get to the right side of the street to reach a bus stop at the south end of the viaduct at the McRee Avenue intersection. (McRee Avenue is one block north of DeTonty Street.) We must hold that there was substantial evidence to support plaintiff's theory.
Defendant argues statements of Kuchenbuch were self-destructive, preventing his testimony from being substantial evidence: namely, that he testified that he heard the bus blow its horn 8 or 10 times and looked in his rear view mirror and saw that the bus was passing him, and that he also said he did not see the bus before the impact, and then said that he did see it; that he testified the truck was sideswiped by the bus, but said he did not see the bus hit the truck; that he testified he was operating about three feet from the west curb, but he also had said he was driving about in the center of the west half of the street; and that he testified both ways as to whether he had eased toward the center of the street. However, we do not think any of his testimony must necessarily be construed to mean that he was easing over or ever eased over for the left turn on the viaduct. The street where he had to make the left turn was one block south of the south end of the viaduct, and reading his testimony as a whole it seems reasonable to construe it as meaning that he always eased over in that block and intended to do so on this occasion. At least the jury could so construe it, and also resolve the other alleged conflicts in his testimony about the course and movements of the bus and truck in the light of all the facts and circumstances in *911 evidence. See Hoffman v. Peerless White Lime Co., 317 Mo. 86, 296 S.W. 764; Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47; Mooney v. Terminal R. Ass'n, 353 Mo. 1080, 186 S.W.2d 450. We hold that, while his testimony was not entirely clear and definite, it was not self-destructive and also that it was not the only evidence of defendant's negligence as we shall hereinafter show.
Defendant further contends there was no jury case because the evidence leaves the cause of the accident to speculation, guesswork and surmise. Defendant argues that Kuchenbuch said that he "didn't see anything hit anything", that the front end of the bus went on by him before the impact occurred and that he did not realize the bus was near the truck until he felt the impact. Defendant also says the plaintiff only knew that after the front part of the bus had passed the part of the truck where he was sitting there was an impact which threw him down into the bed of the truck, but he did not see what happened. However, we find there was at least sufficient circumstantial evidence to take the case to the jury. In the first place, plaintiff and Kuchenbuch both testified that the truck was driven south about 3 feet east of the west curb (defendant's driver said 4 feet) at a speed of 15 to 20 miles per hour (defendant's driver said 15) and that there was no change in its course, that it never got closer or farther away from the right curb. Defendant's driver also said he never saw the truck get out of that line and that he never did see it more than 4 feet from that right curb. If this is true, there could not have been a collision unless the bus moved close to its line of travel. Furthermore, plaintiff said that the distance between the truck and the bus, as the bus was passing it, was about two feet, and Kuchenbuch said that when the front of the bus came up as far as his left front fender, "it turned to the right." While neither saw the actual contact, they felt it, and the points of impact were shown by the damage to the left fender of the truck and red paint from the bus on its side. The jury could certainly infer from these facts (if they believed them) that defendant's driver was negligent in turning too much to the right befor the bus had entirely passed the truck. We hold that defendant was not entitled to a directed verdict.
Defendant contends that in hypothetical questions to plaintiff's doctors the fact was assumed, without evidence thereof, "that the timber swung around and struck the leg of this man", meaning the board on which plaintiff had been sitting. Defendant also contends that this evidence was never supplied. When the question was asked the first doctor, the objection was: "that it assumes facts not in evidence, that the timber he was sitting on was struck by a bus. I object further on the ground that it assumes the timber swung around and there is no evidence of that. Mr. Pettis testified he didn't see it swing around. He assumed it did." At that time, plaintiff had not completed his testimony and Kuchenbuch had not testified. The following further statements were made:
"Mr. Boas: Just a minute. I want the evidence to be supplied as contained in the hypothetical question.
"The Court: Well, he said he would.
"Mr. Boas: That the timber was driven in there
"The Court:and swung around.
"Mr. Miller: I understood the plaintiff to testify the timber swung around and struck his right leg. There is no testimony yet about the timber being driven, one end being driven against the back end of the cab but I will supply that from the mechanic who made the repairs.
"Mr. Boas: Is it my understanding that Mr. Miller will supply the facts assumed in the question, that the bus struck the timber?
"The Court: That as a result of this collision the timber was driven in.
"Mr. Miller: We have eliminated everything else except this bus.
"The Court: The objection will be overruled on that."
When the second doctor testified, the objection was: "I object further on the ground that there is no evidence of the *912 fact that the bus hit the board." The Court overruled it, saying: "Mr. Miller promises to connect that up later." Plaintiff had said that he did not see the board swing around and hit him, and he also had said he couldn't say what hit the board. However, he had stated the circumstances of the bus passing the truck, that there was an impact, and further stated: "I was thrown off the board and down into the truck; the board came around and struck me and threw me down into the bed of the truck. * * * The board was tore loose from this side where I was sitting on and it came around and the force of it struck me in the leg here. (witness indicates.)" He had also testified that this board was nailed to the top side boards which were placed above the metal bed of the truck (secured to it by bolts) and that it overhung about two inches beyond the top portion of the bed of the truck. Thereafter, he testified to the position of the board after the impact, and marked its position on one of the photographs showing that one end was on the floor of the truck and the other protruding over the side of the truck just behind the cab. Thereafter, Kuchenbuch also testified to all of the details of the occurrence and that, after the impact, he saw the board sticking up over the corner of the cab with the nails in it. Thereafter, the mechanic who repaired the truck also testified there was a dent in the back end of the cab from the back window toward the door 18 inches long, 4 inches wide and 3 inches deep, and that there was red paint on the side of the body of the truck back of the cab. We think these facts were sufficient to warrant a jury finding that the side of the bus struck the board, tore it loose and swung it around, and hold there was no error in including such an assumption in the hypothetical questions.
After reading the entire argument of both counsel, we do not think the case should be reversed because of what occurred in the oral argument. Two of the statements complained of in defendant's brief were not objected to and referred to witnesses (passengers on the bus), who had testified as plaintiff's witnesses at a previous trial, being used as witnesses by defendant at this trial. However, their testimony concerned what happened after the impact. They did not know anything about the position of the vehicles before the impact and their attention was first called to the occurrence by the breaking of a window behind the exit door of the bus. We see no reason to further consider this part of the argument to which no objection was made. During the argument, plaintiff's counsel commented on testimony of the bus driver (corroborated by these passengers) that the bus stopped in the middle of the street immediately after the collision before pulling over to the curb. He first read from the driver's deposition to show that such a stop was not mentioned therein and then said: "That is an idea of Mr. Boas, born somewhere of the necessities and the exigencies of this case, and that is an idea created and impatterned in somebody's mind in the hope it might convince and confuse the jury." The objection, ruling and further proceedings were as follows:
"Mr. Boas: I want to object to that as being an improper defense, and ask that the jury be instructed to disregard it.
"The Court: The jury will be guided by the evidence.
"Mr. Miller: I will leave it to your judgment. Don't take my judgment for it. You just decide in your own mind whether or not there has been a little bit of switching in the facts since February the 7th, 1949. Don't take my word.
"Mr. Boas: Same objection.
"Mr. Miller: Don't take my word, take the written word here of defendant bus driver.
"Mr. Boas: Same objection."
Defendant now says plaintiff's counsel was "charging the defendant's lawyer with creating and patterning false testimony", but that was not the objection made and this statement considered with the other later comments, might be construed instead as concerning the credibility and faulty memory of the witness. No further ruling or action was requested by defendant. While plaintiff's counsel had *913 the right to comment on the difference in the testimony of defendant's bus driver in his deposition and at the trial, it was improper for him to state that it was an idea of defendant's counsel and there was no basis for such a statement. However, he may have meant that counsel got this idea from the witness, and considering the objection made and the rest of the argument, we cannot rule there was reversible error in failing to take further action. These statements were all made in the closing argument of plaintiff's counsel and were, to some extent, retaliatory to the arguments of defendant's counsel in which he assailed the credibility of plaintiff's witness Kuchenbuch and characterized plaintiff's "story" as "ridiculous". There was a further comment of plaintiff's counsel complained of by defendant, concerning testimony of another bus driver of defendant, that he saw a plank in the street behind the truck. (Defendant tried to show there were several boards in the truck and that one of them stuck out far enough over the side to strike the window of the bus.) However, the only objection made was to a statement of plaintiff's counsel that "if that piece of timber had been lying in the street, I want to say to you that the Police of the Department of the City of St. Louis would have picked it up and reported it." The objection was: "there is no evidence it did or did not. I ask it be stricken and the jury instructed to disregard it." The Court did order this stricken and no other action was requested. The assignment as to the oral argument is overruled.
We cannot hold the verdict was excessive after remittitur. ($18,500.00). At the time he was injured, plaintiff was 50 years old and was earning $45.00 per week (about $2,340.00 per year) with a life expectancy of 20.39 years. He had an oblique comminuted fracture of the tibia of the right leg, about 3½" above the ankle joint, and two comminuted fractures of the fibula of the same leg and the fragments were in poor position and had not healed in more than a year from the time of the injury. Holes were drilled through the tibia and through the ankle bone for the insertion of Kirchner wires. The fragments of the tibia had not been realigned in proper apposition, and there was not a complete union between them. The healing was in bad position and would cause pain and prevent him from carrying weight on that leg; there was a loss of at least 60 to 70 per cent in its weight bearing. The angle of the fracture made union difficult and later X-rays showed "this bone on this slanting break had slid down further creating a greater deformity than existed before." The doctors did not expect any more union than had taken place at the time of the trial. Five separate casts were placed on plaintiff's leg, it was still in a cast at the time of the trial, and plaintiff was still under medical care. He was able to get about with the aid of crutches, but there had not been complete healing and the angulation of the deformity made the leg subject to refracture upon any unexpected misstep because "a very slight force would be able to separate these fragments again." It was the opinion of Dr. Pernoud that these conditions of his leg would persist throughout his life; that "he will never have a useful foot"; and that he would never be able to do any manual labor. Plaintiff also sustained a lumbo-sacral sprain causing a separation of the vertebrae in the lumbo-sacral joint and the ligaments were torn in that area. There was still tenderness over the sacroiliac joint and his back muscles were inflamed and tense. He was required to wear a strong supportive corset or brace at all times. He also sustained a cerebral concussion, the after-effects of which were severe and persistent occipital headaches, dizziness, and recurrent spells of dizzy, staggering sensations.
"We are usually reluctant to order a further reduction after the trial court has considered and passed upon the matter and once substantially reduced the amount." Gieseking v. Litchfield & Madison Ry. Co., 344 Mo. 672, 127 S.W.2d 700, 708; see also Orr v. Shell Oil Co., 352 Mo. 288, 177 S.W.2d 608; Schaefer v. Transamerican Freight Lines, Mo.Sup., 173 S.W.2d 20; Cook v. Kansas City, 358 Mo. 296, 214 S.W.2d 430; Cruce v. Gulf, M. & O. R. *914 Co., Mo.Sup., 238 S.W.2d 674. This is because of the trial judge's advantage of having seen and heard the parties and the witnesses as they appeared before him, giving him a better opportunity to evaluate their testimony.
The judgment is affirmed.
All concur.