Walter J. GLOWACKI, Respondent,

v.

Warren HOLSTE and Louis E. Stagoski, Appellants.

No. 44790.

Supreme Court of Missouri.

Division No. 1.

Nov. 12, 1956.

Coburn & Croft, Richmond C. Coburn, Joseph M. Kortenhof, St. Louis, for appellant Warren Holste.

Henry C. Stoll, Stoll, Hayes & Wines, St. Louis, Joseph Nessenfeld, St. Louis, of counsel, for respondent.

COIL, Commissioner.

At about 6:30 p. m. on December 21, 1953, Walter J. Glowacki was a passenger in a station wagon being driven by appellant Louis E. Stagoski eastwardly on bypass U.S. Highway 40. Appellant Warren Holste was driving his automobile westwardly and the vehicles collided. The collision occurred about 1½ miles west of St. Peters on a stretch of blacktop pavement which temporarily connected new concrete pavement on the west with old pavement on the east. Glowacki had a verdict for $25,000, and Holste and Stagoski appealed from the ensuing judgment. Stagoski's appeal was dismissed for failure to file a brief. We shall hereinafter refer to the parties as they were designated in the trial court.

We have decided that the judgment as to defendant Holste must be reversed and the case remanded for a new trial because of prejudicial error contained in plaintiff's verdict-directing instruction 1. In view of that conclusion, and because the attack on the instruction does not involve the evidence, the brief statement above will suffice.

Instruction 1 was: "The Court instructs the jury that if you find and believe from the evidence in this case that at the time and place of the collision described in the evidence defendant, Warren Holste, drove his Pontiac automobile westwardly along said highway toward and upon a portion thereof referred to in the evidence as a 'Y', and that he reached a point therein described as the western part of said highway and that while so doing he failed to keep a reasonable lookout for vehicles entering said 'Y' from the west, and that he failed to reduce the speed of his vehicle but drove same at a high and excessive rate of speed, under the circumstances, to-wit: In excess

of 45 miles per hour and that he failed to keep said Pontiac as near to the right hand side of said highway as was then and there reasonably practicable, and drove into collision with a station wagon automobile being then and there operated eastwardly by defendant, Louis Stagoski, and that plaintiff was injured thereby, if you so find; and if you further find that to operate said Pontiac automobile in the aforementioned manner constituted negligence on the part of defendant, Warren Holste, and that plaintiff's injuries, if any, were the direct and proximate result of such negligence, if any, then your verdict should be in favor of the plaintiff and against the defendant, Warren Holste."

The specific language to be considered, of course, as a part of the instruction as a whole, is this: " * * * if you find and believe from the evidence * * * that at the time and place of the collision * * Warren Holste, * * * failed to reduce the speed of his vehicle but drove same at a high and excessive rate of speed, under the circumstances, to-wit: In excess of 45 miles per hour * * *."

■ We are of the opinion that defendant Holste correctly contends that the foregoing instruction was erroneous because the court therein directed the jury, as a matter of law, that a speed in excess of 45 miles per hour was a high and excessive rate of speed under the circumstances shown in evidence. Our examination convinces us that the language of the instruction cannot be construed reasonably in a way to justify any other conclusion. But, in any event, there is no doubt that the instruction reasonably was subject to the construction that, and the jury probably would understand that, the court had directed that if the jury found that defendant Holste drove at a rate of speed in excess of 45 miles per hour, such speed was, as a matter of law, a high and excessive rate of speed under the circumstances shown in evidence.

We think that the most effective way to demonstrate that a jury reasonably would understand from the foregoing language that the court thereby had directed that if Holste drove at a speed in excess of 45 miles per hour it was an excessive rate of speed under the circumstances shown in evidence, is to compare the language of instruction 1 with the language of the following clause (which would be the usual and ordinary way to submit the proposition that plaintiff now contends he intended to and did submit in instruction 1): "If you find and believe from the evidence that at the time of the collision defendant Holste was driving his automobile at a rate of speed in excess of 45 miles per hour and that such was a high and excessive rate of speed under the circumstances shown in evidence" etc. Plaintiff, to sustain his present contention, must, of necessity, say that the immediately preceding language would be understood by jurors to mean the same thing as the language of instruction 1 heretofore quoted. We think it is too plain for extended discussion that such an assertion is erroneous. That is because the proposed language clearly requires the jury to find both that Holste's speed was in excess of 45 miles per hour, and that such was an excessive speed under the circumstances, while the language of instruction 1 required the jury to find only that Holste's speed was in excess of 45 miles per hour to make effective the court's direction that such rate of speed was excessive.

We have found only one prior case in this state in which a court had under consideration an instruction in a negligence action essentially the same (as to speed submission) as instruction 1 in the instant case. In Mueller v. Holekamp, Mo.App., 260 S.W. 118, the St. Louis Court of Appeals considered an instruction which contained this language: "* * * and that said defendant in so operating the automobile driven by him then and there negligently ran said automobile at a high, excessive, and reckless rate of speed, to wit,

at about 30 or more miles per hour, * *.'" 260 S.W. 120. Defendant in that case complained that the instruction declared as a matter of law that a speed of 30 or more miles per hour was an excessive and reckless rate of speed. The Court of Appeals, in discussing the matter, said: "The instruction is unquestionably open to the criticism made against it, * * *." 260 S.W. 121 [5]. The court in Mueller, however, correctly held that the defendant by its instruction had adopted the same theory of law as set forth in plaintiff's instruction and therefore could not complain of the erroneous submission. Cf. Llywelyn v. Lowe, Mo.App., 239 S.W. 535, 537 [2].

Plaintiff, to support his contention that instruction 1 in the instant case permits the jury to find from the evidence whether a speed in excess of 45 miles per hour was in fact excessive, relies on two criminal cases: State v. Henderson, 356 Mo. 1072, 204 S.W.2d 774, and State v. Grayor, 89 Mo. 600, 1 S.W. 365. In the Henderson case, the court held that the following language in the state's main instruction did not tell the jury that the weapons used were deadly per se: " 'The Court instructs the jury that if they believe and find from the evidence that the defendant Forrest Henderson did * * * make an assault upon (Melvin) with a dangerous and deadly weapon, to-wit: a stick of wood, and his hands and feet, and if you further find' * * *." 204 S.W.2d 780. In State v. Grayor, the court held that the following language in an instruction did not assume that the club used was a dangerous weapon: " * * * 'If, from the evidence, the jury believe and find that * * * defendant did, * * * by means and use of a dangerous weapon, to-wit, a wooden club, feloniously kill * * *'." 1 S.W. 366.

We, of course, concede that those two cases lend support to plaintiff's present contention. However, when the pertinent portions of those opinions are examined, we are not persuaded that the holdings in those cases should cause us to construe the

clear language of the instant instruction contrary to its apparent meaning. In Grayor, the court said this with reference to the contention there made: "We do not so understand the instruction. It starts out by saying if the jury believe and find, and this runs through the entire instruction. That a wooden club was used is not disputed or doubted. The instructions left it as a fact for the jurors to find whether the club was a dangerous weapon." 1 S.W. 366.

In Henderson, the court said that "to wit" was used in that instruction as a "videlicit," the function of which was to explain or qualify the preceding words; and that, therefore, the instruction should be construed as though the phrase "that is to say" had replaced "to wit." Assuming that the court in that case correctly stated the meaning and function of "to wit" as there used, we are unable to discern how the insertion of the phrase "that is to say" to replace the words "to wit" could possibly change the meaning of the language there used. If the suggested substitution were made in the instant instruction its language then would be in substance: If you find that Holste drove at a high and excessive rate of speed under the circumstances, that is to say, at a rate of speed in excess of 45 miles per hour. Obviously the substituted phrase does not change the meaning. The fact remains that the court has directed that a speed in excess of 45 miles per hour was an excessive speed under the circumstances of the instant case. We need not pause to examine the proposition of whether the conclusions reached in the two cited criminal cases, as to the instructions there, were or were not erroneous in the light of other possibly relevant considerations. We conclude only that, despite the Henderson and Grayor cases, we are unwilling to hold that the instruction in the instant case is subject to any other reasonable construction than that the court has declared the legal effect of evidence as to a certain speed.

We take it that there can be no dispute about the proposition that it is error for the court to declare as a matter of law a result or legal effect which is within the exclusive province of the jury to determine. Doty v. Fisher, Mo.App., 200 S.W.2d 534, 537 [4]. And, inasmuch as the instant case did not involve a rate of speed fixed by ordinance or statute, the question of whether a given rate of speed was excessive and therefore negligent under particular circumstances was clearly a jury question. Agee v. Herring, 221 Mo.App. 1022, 1027, 298 S.W. 250, 253; Woods v. Kansas City Light & Power Co., Mo.App., 212 S.W. 899, 902.

The question remains, however, whether the error heretofore noted was prejudicial to the defendant. Plaintiff says that it was not because the instruction submitted three separate grounds of negligence and the jury having found all three negligent acts as the proximate cause of plaintiff's injuries, two of which were properly submitted, any error in the submission of the speed issue was harmless. We cannot agree for reasons which will appear.

In the first place, it should be noted that while the instruction purports to permit the jury to find whether a rate of speed in excess of 45 miles per hour was a *negligent* speed, the fact is that the court, by directing such a speed was an excessive speed, also directed, in effect that if Holste's speed was in excess of 45 miles per hour, he was negligent. A speed which is excessive under the circumstances is a negligent speed.

Also pertinent is the fact that the manner in which instant instruction 1 is drawn, makes it apparent that it does not in fact submit three *separate* acts of negligence conjunctively. The instruction requires the jury to find that defendant Holste failed to keep a proper lookout, that he failed to drive as close to the right-hand side of the highway as practicable, and that he drove in excess of 45 miles per hour (which, if so, the court directed was neg-

ligence), and then states: "and if you further find that *to operate* said Pontiac automobile *in the aforementioned manner constituted negligence* on the part of defendant, Warren Holste, * * *." (Our italics.) Plaintiff chose to require a finding of a *combination* of the three hypothesized acts as the negligence submitted rather than, as he could have done, requiring a finding that *each* of the acts hypothesized constituted negligence on defendant's part. The court said, in effect, you may find that a combination of the three hypothesized acts constituted negligence—but in so determining I direct you that if Holste drove in excess of 45 miles per hour, he was negligent.

 Even if it be assumed, however, that instant instruction No. 1 did submit separate negligent acts conjunctively, decisive is the fact that, as we view it, the instruction does not fall within the "harmless error rule of conjunctive submission." Generally speaking, that rule is applicable to instructions which submit separate negligent acts conjunctively where one or more of the hypothesized acts is or are not supported by sufficient evidence or where an instruction hypothesizes negligence not contained in a pleading conjunctively with another hypothesis of negligence which is contained in a pleading. Beahan v. St. Louis Public Service Co., 361 Mo. 807, 812, 237 S.W.2d 105, 107. As is pointed out in the Beahan case the "conjunctive submission" rule does not apply in a situation where "one of the grounds of negligence is an improper statement of the law," in which event the instruction is prejudicially erroneous even though the ground of negligence which is submitted under an erroneous statement as to the applicable substantive law is submitted conjunctively with a ground of negligence properly hypothesized and which involves the application of a correctly stated principle of substantive law. 237 S.W.2d 107 [3]. The defect in the instant instruction is that the trial court usurped the jury's exclusive province by directing that a certain conclu-

sion followed from a certain finding of fact as a matter of law, when it was the jury's province and duty to determine whether that certain conclusion did or did not follow. If the exact principle of the Beahan case is inapplicable to the instant instruction, we are, nevertheless, of the view that instant instruction falls within the broad principle enunciated in the Beahan case rather than within the compass of the rule of "harmless error of conjunctive submission."

 In any event, and without respect to the effect of the Beahan case, supra, we are of the view that the fact alone that there is a conjunctive submission is not a "cure-all" which necessarily and automatically makes harmless an erroneous portion of an instruction. On the contrary each instruction must be examined to determine whether, after the application of the "rule of conjunctive submission," a given instruction is, despite conjunctive submission, prejudicially erroneous. Wilson v. Kansas City Public Service Co., Mo., 291 S.W.2d 110, 118 [18]. So viewing the instant instruction, we are of the opinion that, for the reasons heretofore stated, it was so drawn that we may not say that the error contained in it was not prejudicial to defendant Holste.

Plaintiff now contends that this court should limit any retrial of the instant case to the issue of liability. Section 512.160, subd. 3 RSMo 1949, V.A.M.S., provides that a new trial shall not be ordered as to issues in which no error appears. It was defendant Holste's contention at oral argument that the issues of liability and damages were so interwoven and interdependent that a retrial of the liability issue only would result in unjust prejudice to defendant. There is nothing in defendant Holste's brief, however, which tends to support the foregoing contention. Our examination of the transcript convinces us that the issues of damages and liability are separable and that the liability issue may be fairly tried separately, unless we determine

hereinafter that defendant Holste's contention that the trial court erred in admitting in evidence a certain leg brace is correct, and, if so, unless we further determine that such error, if any, was such that we may not know the effect of that exhibit on the size of the verdict.

Plaintiff testified that some 69 days after the accident his attending physician prescribed a Thomas cantilever leg brace. Plaintiff wore it for about five months and suffered additional discomfort, pain, and inconvenience as a result of wearing the brace. The trial court admitted the brace in evidence on the theory that the jury by viewing it might better understand its nature and the manner in which it was applied to a limb. The trial court considered the matter of the admission of that exhibit in chambers and apparently after full discussion with counsel.

Defendant contends that there was no issue in the case concerning the leg brace; that defendant did not challenge the fact that plaintiff had worn the type of brace verbally described for the length of time plaintiff said he had, and that its only purpose was to inflame the jury against the defendant, which purpose, defendant says, was successfully accomplished as was demonstrated by the jury verdict of $25,000.

Defendant relies on the recent case of Taylor v. Kansas City Southern Ry. Co., 364 Mo. 693, 266 S.W.2d 732, wherein this court held it reversible error to twice permit a dramatization of the manner and method in which a laminectomy was performed, on the ground that there appeared no sufficient reason for dramatizing a laminectomy before the jury. Certainly it needs no elaboration to demonstrate the obvious conclusion that the dramatization of a laminectomy is wholly unlike and in no manner comparable to the jury's viewing a leg brace which was worn as part of the treatment administered to plaintiff and which caused pain and inconvenience. Other cases cited by defendant Holste have to do with demonstrations before a jury, or the display of clothing worn at the time of an accident, or permitting a doctor to examine a plaintiff in the presence of a jury. We consider none of those cases applicable to the question here.

■■■ We agree that generally a trial court should not permit plaintiff to display articles which would prejudice the jury against a defendant or unduly arouse the jury's sympathy for plaintiff. We are of the view, however, that the leg brace (which was viewed by this court during oral argument) was not the type of surgical appliance which would have that effect. It follows, therefore, that the trial court did not abuse the discretion vested in it in ruling the admissibility of demonstrative evidence, by permitting the jury to view the leg brace in question.

Our conclusion above makes it necessary to examine the evidence to determine whether the judgment for $25,000 is excessive. The trial court overruled defendant Holste's motion for a new trial which contained the assignment that the verdict was excessive. We, therefore, view the evidence as to damages from the standpoint most favorable to sustaining the trial court's action.

Plaintiff was 38 at accident time and 39 at trial time. He was a television serviceman earning take-home pay of $100 a week, in good health, and had sustained or suffered no prior serious injuries or illnesses. As noted heretofore, the accident occurred in December, 1953, and plaintiff, after spending 69 days in a hospital, was able to return to his work as television serviceman in the latter part of July, 1954, and had been working continuously at his trade since his return to work. His hospital, medical, nursing expenses, and loss of wages amounted to approximately $5,500.

Following the accident, plaintiff was taken to St. Joseph's Hospital in St. Charles. Plaintiff, describing his injuries and their effect upon him, testified that his left leg was immobilized and his fractured

right leg placed in an apparatus which suspended it over his bed with weights pulling up and outwardly; that stainless steel wires were later put through his leg above the knee and through his shin bone; that his foot was broken at the instep, his right hip was injured, and his right side bruised and contused. He said he had a collapsed lung which had to be drained, and that he suffered a head injury which had caused headaches. After 69 days his leg was put in a cast and the doctor prescribed the brace heretofore mentioned. For two weeks thereafter he used the brace and crutches and then, for the six weeks following, used the brace alone. Plaintiff testified further that he suffered pain in his left leg due to its immobilization; that his right hip now has a "hollow feeling" and does not feel normal; that he has scars on his right leg; that the last two fingers on his right hand are constantly numb; that his condition has improved but that he still suffers headaches, intermittent but continuous pain in his right limb with the pain being more severe during changes of weather, and that he is constantly conscious of the fact that his right leg has been injured.

Dr. Russell J. Crider first saw plaintiff in the emergency room at the hospital when plaintiff was in severe traumatic shock with an obvious injury to his right thigh and internal injuries. X rays were taken, emergency treatment administered, and the leg put in traction. Plaintiff had a badly comminuted fracture of the right leg between the knee and hip. The bone was shattered to such an extent that plates could not be used and consequently it was necessary to put a pin or wire through the bone which was attached to a weight in order to attempt to pull the fragments of the bone into a straight line. A large V-shaped section of the bone 4 to 6 inches in length was completely dislocated and displaced.

Later examination showed plaintiff had also suffered fractures of three or four ribs and a complete collapse of the right lung.

The resultant air and blood had to be removed from the chest cavity. In addition, clinical findings supported a diagnosis of contusion or rupture of the liver, there was a paralysis of the ulnar nerve in the right arm causing anaesthesia of two fingers of the right hand, and the bases of the second and third metatarsal bones of the right foot were fractured.

The doctor testified that plaintiff's shock lasted for a week and that for a month or six weeks plaintiff was mentally confused and suffered aberrations due to the trauma of the accident. The attempt to align the bone fragments by traction was unsuccessful due to the fact that loose fragments had penetrated the quadriceps muscle and a portion of the tendon which goes into the kneecap with extensive tearing toward the front. An open reduction was performed through the hole which had been made in the ligament by the large V-shaped bone fragment. The tearing of the ligament and the hole in the muscle had healed by the formation of scar tissue which is rough and does not align with the natural ligament tissue and performs only the function of bridging the gap between the good parts of the ligament and muscle and holds them together. The right leg is ½" shorter than the left, the right leg bone is thicker, and the right leg muscles show some atrophy. The calf of the right leg is ½" smaller than the left and the right thigh is 1" smaller than the left. Plaintiff walks with a limp and has sustained a 35% loss of the function of his right leg at the knee. The condition of the right leg heretofore described is permanent.

The collapsed lung was fully expanded by January 11, 1954, although a friction rub had developed between the lung and inside of the chest which was not entirely eliminated until July 19, 1954. The fractures of the second and third metatarsal bones and the fractures of the three or four ribs had healed. The anaesthesia of the two fingers on the right hand continued at trial time. The contusion or rupture of the

liver was healed prior to trial. The mental confusion caused by the head injury was gone by February, 1954, although, as we understand, intermittent headaches continued.

 In summary, it would appear that plaintiff suffered severe injuries at the time of his accident; that the injuries to his lung, liver, foot, and head, while serious and painful, proved to be temporary in nature and will not appreciably affect plaintiff's ability to work in the future. The anaesthesia in plaintiff's two fingers of the right hand was present at trial time and, as we understand, the prognosis was uncertain. Plaintiff's right limb is permanently injured and disfigured with a 35% disability at the knee which interferes with his ability to move and bend his knee and which causes plaintiff to suffer intermittent but continuous pain and to walk with a limp. Plaintiff's special damages, as noted, were approximately $5,500, but his future earning capacity was unimpaired.

We have examined the cases cited by the parties and other cases as well. The cases of Willis v. Wabash R. Co., Mo., 284 S.W.2d 503, Pettis v. St. Louis Public Service Co., Mo., 240 S.W.2d 909, and Lang v. St. Louis-San Francisco Ry. Co., 364 Mo. 1147, 273 S.W.2d 270, are helpful in determining the question of excessiveness.

In Willis v. Wabash R. Co., supra, plaintiff sustained temporary injuries to his ankle, head, and heel, and contracted pneumonia during the period of his hospitalization. His left leg and left knee were permanently injured resulting in 85% disability in the use of the lower left leg and resulting in traumatic arthritis of the left knee joint. Pre-existing arthritis of the lower back was aggravated. The evidence in that case, however, was that plaintiff would be unable to continuously do any manual labor, including the performance of his duties as a railroader, the occupation he had followed for 25 years. Plaintiff's special damages in that case were $4,500.

Willis was 47 at the time of trial, while instant plaintiff was 39. We affirmed a judgment in that case for $22,000 after the trial court had reduced the jury's verdict from $30,000 to $22,000. We pointed out in that case that the most serious aspect, from plaintiff's standpoint, was the impairment of his earning capacity. We said that the judgment, after remittitur, was adequate and perhaps generous, but that we were unwilling to hold that the trial court had abused its discretion in limiting the required remittitur to $8,000.

In Lang v. St. Louis-San Francisco Ry. Co., supra, there were injuries to plaintiff's chest and ribs with no serious permanent effect therefrom. The most serious injury was the fracture of the left femur (which, as in the instant case, was reduced by an open reduction) resulting in permanent disability evidenced by loss of motion in the hip and knee joint. Lang was 67 at accident time. Medical expenses were $785 and it did not satisfactorily appear in the record what plaintiff's loss of earnings may have been. It was held that the judgment of $18,359 in that case was not so excessive as to compel a remittitur.

Taking into account instant plaintiff's age, his $5,500 expenses and loss of earnings, the nature and extent of his injuries and his pain and suffering, but recognizing that his earning capacity has not been impaired, and at the same time attempting to maintain some uniformity of judgments in personal injury cases involving similar injuries, but recognizing the fact that no two cases are alike and that we must consider each on its own facts, we are of the opinion that the judgment in this case is excessive in the sum of $5,000.

It follows that the judgment against defendant Holste is reversed and the case remanded for a new trial on the issue of liability only, provided that plaintiff enters here, within fifteen days, a remittitur of $5,000. If plaintiff does enter such remittitur and a retrial of the liability issue only as to defendant Holste results in a verdict

for plaintiff, a judgment will then be entered in favor of plaintiff and against both defendants in the sum of $20,000.

In the event that plaintiff refuses to remit, the judgment as to defendant Holste is reversed and the case remanded for a new trial on both liability and damages as to Holste, and defendant Stagoski may participate in that retrial on the issue of damages only. In the event that such retrial results in a verdict for plaintiff a judgment in favor of plaintiff and against both defendants will then be entered. In the event that a retrial of both issues as to defendant Holste results in a verdict in his favor, the present judgment against defendant Stagoski in the sum of $25,000 will remain in full force and effect as of the date it was originally entered.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.