JoAnn HAMILTON, a minor, by Florence Hamilton, next friend, Appellant,

v.

Frank FULKERSON, Respondent.

No. 44696.

Supreme Court of Missouri.

Division No. 1.

Dec. 12, 1955.

Opinion Modified on Court's Own Motion and Motion for Rehearing or to Transfer to Court en Banc. Denied Jan. 9, 1956.

J. P. Morgan, Chillicothe, for appellant.

Kitt & Somerville, Ronald L. Somerville, Chillicothe, for respondent.

COIL, Commissioner.

JoAnn Hamilton, a minor, by her next friend, filed a suit on August 19, 1954, in which she sought damages for alleged personal injuries which she claimed resulted from the negligence of Frank Fulkerson when she was a passenger in his automobile. On August 21, 1954, JoAnn and Frank were married. Fulkerson's motion to dismiss the action was sustained and JoAnn appealed from the ensuing final judgment. The case is one of first impression in this state.

The present rule in Missouri, established by the cases of Rogers v. Rogers, 1915, 265 Mo. 200, 177 S.W. 382, and Willott v. Willott, 1933, 333 Mo. 896, 62 S.W.2d 1084, 89 A.L.R. 114, is "that an action for a personal tort committed by a husband against a wife during coverture cannot be maintained." 177 S.W. 384 [1, 2]. The personal tort in the instant case was not committed during the coverture of the par-

ties but, as noted, occurred prior to their marriage.

Initially, however, we should examine the Rogers and Willott cases to determine whether the reasons for their results are likewise applicable to and decisive of the facts of the instant case. Willott (which incidentally was an action for personal injuries sustained by a wife while a passenger in an automobile driven by her husband), without change or addition, affirmed Rogers in all respects. In each of those cases the same two sections of the married women's act were examined and construed, viz., Sections 1735 and 8304, RSMo 1909 (in Rogers) and Sections 704 and 2998, RSMo 1929 (in Willott). Section 1735 of 1909 (same as 704 of 1929, which became Section 855, RSMo 1939) was repealed by Laws 1943, p. 353, and what had been Section 855 of 1939 was merged in new Section 11 of the 1943 Laws and is now Section 507.010, RSMo 1949, V.A.M.S. That section provides for the prosecution of actions in the name of the real party in interest. Apparently it was believed that the language of the new section was broad enough to include actions by married women which previously had been treated by a separate section. It would appear that, by reason of the repeal of Section 855 of 1939, which was considered and construed in Rogers and Willott, and that by virtue of the fact that present Section 507.010, replacing former Section 855 of 1939 makes no reference to married women and does not treat them separately under the real party in interest section, we need not further concern ourselves with Rogers and Willott in so far as they construed that section.

Section 8304 of 1909, construed in Rogers and Willott (the same as 2998 of 1929), is now, without pertinent change, Section 451.290, RSMo 1949, V.A.M.S.: "A married woman shall be deemed a *femme sole* so far as to enable her to carry on and transact business on her own account, to contract and be contracted with, to sue and be sued, and to enforce and have enforced against her property such judgments as may be rendered for or against her, and

may sue and be sued at law or in equity, with or without her husband being joined as a party; provided, a married woman may invoke all exemption and homestead laws now or hereafter in force for the protection of personal and real property owned by the head of a family, except in cases where the husband has claimed such exemption and homestead rights for the protection of his own property."

It was said in Rogers and Willott that the foregoing statute declared the purposes for which a married woman would be deemed a femme sole; that because a husband's right to sue was a common-law right and because it did not include the right to sue his wife for a personal tort, there were stronger reasons why a wife whose rights were purely statutory should have no right of action against her husband for a personal tort, in the absence of express statutory language giving her that right or in the absence of clear language from which the conference of that right could be implied. And the court held that there was no express statutory language in present Section 451.290 conferring on the wife a right to sue her husband for personal tort, and, apparently, the court was of the opinion that there was no language in that section from which such right could be implied.

In commenting on the reason for the lack of the common-law right of a husband to sue his wife, the court in Rogers said: "Whether the absence of this authority is due to the doctrine of the unity created by the marriage relation, or to an effort on the part of Legislatures and courts to promote harmony or at least lessen the cause of controversy between husband and wife, the nonexistence of the husband's right in this regard uniformly prevails." 177 S.W. 384 [1, 2]. We point out that close examination of the Rogers and Willott cases shows that, in so far as the decisive language of the opinions is concerned, they were based primarily upon the principle of statutory interpretation. But in Rogers, the quotation from "Cooley on Torts (3rd Ed.) p. 474, and notes" and the cases cited in support of the result there reached, 177 S.W. 384, indicates that the reasons prompting the statutory construction there made rather than the possible and plausible contrary construction, were considerations of "public policy". It was thought that the courts should construe the women's emancipation statutes in such a way as would avoid the possibility of disturbing domestic tranquility.

Important for present purposes is the fact that neither in Rogers nor Willott did the court consider the effect of present Section 451.250. In Willott the court pointed out that that section related only to the separate property rights of a married woman and, therefore, because the Willott case involved a personal tort committed during coverture, gave that section no consideration. Here, however, we are dealing with a personal tort committed by a spouse prior to marriage and consequently Section 451.250 may be pertinent. That section, Section 451.250 provides in pertinent part that "any personal property, including rights in action, belonging to any woman at her marriage, * * * shall * * * be and remain her separate property and under her sole control, * * * and any such married woman may, in her own name and without joining her husband, as a party plaintiff institute and maintain any action, in any of the courts of this state having jurisdiction, for the recovery of any such personal property, including rights in action, as aforesaid, with the same force and effect as if such married woman was a *femme sole* * * *."

There can be no doubt that "rights in action," as used in the foregoing section, includes any cause of action which was the property of a wife at the time of her marriage. Thus, when JoAnn's cause of action came into being, she was single and unmarried. That cause of action remained her separate property to be thereafter dealt with by her as if she were unmarried. If we were construing the meaning of the foregoing section, uninfluenced by the rationale of the statutory construction employed in Rogers and Willott, and uninfluenced by the results reached in oth-

er jurisdictions on facts identical with those of the instant case, we should have no doubt that Section 451.250 authorizes a married woman to sue her husband for a personal tort committed by him prior to their marriage. The language of the statute seems broad and plain. It provides that a woman's personal property, which, of course, includes a cause of action, owned by her at the time of her marriage, is to be and remain her separate property and under her sole control and that she may maintain *any action* for the recovery of that personal property as if she were unmarried. And we should have no hesitancy in holding that, even if the common-law rule that marriage extinguished all rights of action and claims by one spouse against another, 41 C.J.S., Husband and Wife, § 396, p. 880; Staats v. Co-operative Transit Co., 125 W.Va. 473, 24 S.E.2d 916, should be, in the absence of specific statutory provision to the contrary, recognized and applied today in Missouri, Section 451.250 furnishes the necessary specific statutory authority for the abrogation of that rule as it might otherwise apply to the facts of the instant case.

■■ It may be contended, however, that because there is no express language in Section 451.250 mentioning the right of a married woman to sue her husband for an antenuptial tort, that, therefore, Section 451.250 should, because of the construction theretofore given Section 451.290 in Rogers and Willott, be construed to the effect that the section conferred no right on a wife to maintain an action for an antenuptial tort because of the common-law rule that antenuptial claims between spouses were extinguished by marriage and that, therefore, by analogy to Rogers and Willott, Section 451.250 conferred no right on the wife which the husband did not have at common law. If such an argument is valid, we are compelled to answer that any logical reason for the existence of the common-law rule that marriage extinguished all antenuptial claims between spouses has ceased to exist and, therefore, the application of that rule should cease. Irrespective of statutes, any common-law rule based upon the fiction of the identity of husband and wife, long since contrary to the fact, should not be applied to any "first impression" fact situation arising in this state.

In Claxton v. Pool, Mo.Sup.1917, 197 S.W. 349, L.R.A.1918A, 512, the court had before it the question of whether a husband was liable for his wife's torts. Under the facts in Claxton, the husband would not have been responsible with his wife for her tort except for the relationship of husband and wife. In 1915 present Section 537.040 was enacted, which provides that recovery for civil injuries committed by a married woman may be against her alone and that a husband is not responsible except where he would be responsible with her even if the marriage did not exist. But that law had not been enacted in time to control the decision in Claxton v. Pool, supra. Faced squarely with the common-law rule as it had been applied in former Missouri cases and which was applicable under the facts of that case, the court overruled the previous Missouri cases to the contrary and said: "The only rational ground on which L. D. Pool could escape is on the theory that, the reason for the maintenance of the common-law rule having ceased to exist, the application of the rule should cease. The Married Woman's Acts (section 8304–8309, R.S.1909) emancipate a married woman by endowing her with ability to sue and be sued, to manage her own property, to have the earnings of her labor. *Without a specific statutory enactment to that effect, she is recognized as being likewise emancipated*, by the spirit and general trend of legislation, from her personal vassalage to her husband, which prevailed at common law. He has no authority to constrain her actions in the way which was once recognized as his right. In many states, with statutes similar to ours, the courts have boldly said that the rule need not be applied, because the reason for it has ceased to exist." 197 S.W. 352 [6]. (Italics the present writer's.)

It is significant, however, and a fact which we have carefully weighed, that the courts in all other jurisdictions, except two, who enforce the rule of the Rogers

and Willott cases, and who have had before them cases involving facts like those of the instant case, have held that the circumstance that the tort was committed before marriage did not remove those cases from the operation of the rule in the Rogers and Willott cases.

There is an exhaustive annotation in 43 A.L.R.2d 632 (1955), on the subject of the "Right of one spouse to maintain action against other for personal injury" and at pages 642–643, section 4, the general rule supported by the cases cited is thus stated: "In jurisdictions denying a spouse the right to sue the other spouse for personal injuries, it is generally held that the disability obtains notwithstanding that the wrong for which recovery is sought occurred prior to the marriage of the parties." And in Prosser, Law of Torts, 2nd Ed. (1955), Chap. 22, pp. 670–675, dealing with "Torts in the Family," the author makes a like statement of the general rule.

The cases wherein the husband's antenuptial tort was his negligence in the operation of an automobile include these: Lubowitz v. Taines, 293 Mass. 39, 198 N.E. 320; Staats v. Co-operative Transit Co., supra; Spector v. Weisman, 59 App.D.C. 280, 40 F.2d 792; Newton v. Weber, 119 Misc. 240, 196 N.Y.S. 113; Scales v. Scales, 168 Miss. 439, 151 So. 551; Patenaude v. Patenaude, 195 Minn. 523, 263 N.W. 546; Furey v. Furey, 193 Va. 727, 71 S.E.2d 191; Raines v. Mercer, 165 Tenn. 415, 55 S.W.2d 263; Tanno v. Eby, 78 Ohio App. 21, 68 N.E.2d 813; Wolfer v. Oehlers, 8 N.J.Super. 434, 73 A.2d 95; and Hunter v. Livingston, Ind. App., 123 N.E.2d 912. The result in certain of these cases was compelled by reason of explicit statutory language. For example, in the Lubowitz case, supra, the statute specifically prohibited suits between husband and wife. But, generally, the theory of the foregoing cases is, either that the common-law principle that marriage extinguishes antenuptial torts survives unless it is clearly modified or eliminated by statute, or that the basic principle involved does not depend upon the relationship of the parties at the time the cause of action accrued or when the action was commenced but depends upon the relationship which exists when the rights of the parties are judicially determined and that the reasons underlying the rule prohibiting a suit by a wife against a husband for a personal tort committed during coverture apply with equal force to the continuance of a pre-existing cause of action, or on the ground that it would be illogical to hold that the married women's act intended to modify the common law to the extent of permitting the continuation of an action where the personal tort was committed before marriage but did not modify the common law to permit suits where the personal tort occurred during marriage.

As pointed out by the annotator, 43 A.L.R.2d 642, an appellate court in California held that although, under the law of California, a spouse had no right of action against the other for personal injuries occurring during marriage, nevertheless that rule was inapplicable to a premarital tort. [Carver v. Ferguson, Cal. App., 254 P.2d 44.] In that case, however, the California Supreme Court granted a hearing and the case was dismissed pending that hearing, which, under California law, nullified the decision as a California authority. And in North Carolina, the rule of spousal disability was held inapplicable as applied to a premarital tort. [Shirley v. Ayers, 201 N.C. 51, 158 S.E. 840.]

Our examination of the cases, however, convinces us that the real basis for most of the decisions is, that to permit the continuance of an action by a spouse for a premarital tort would be against public policy for the same reasons that to permit a suit by one spouse against the other for a personal tort committed during coverture is said to be against public policy. We remain unconvinced, however, that there are any logical reasons based upon considerations of public policy which should extend the spousal disability to actions for personal torts which occurred prior to marriage.

The reasons usually assigned to support the "public policy argument" are that such actions would: disturb domestic tranquillity; tend to cause marital discord and divorce; cause fictitious, collusive, and fraudulent claims; cause a rise in liability insurance rates; promote trivial actions; and that, in any event, a spouse has adequate remedy for civil wrongs inflicted by the other spouse, through the criminal and divorce courts.

In Mullally v. Langenberg Bros. Grain Co., 1936, 339 Mo. 582, 98 S.W.2d 645, this court held that while, under the law of Missouri as declared in the Rogers and Willott cases, a wife could not maintain an action against her husband for a personal tort committed during coverture, nevertheless, the wife could maintain an action against her husband's employer for personal injuries sustained, on account of her husband's negligence while acting in the scope of his employment and this, even though the court recognized the employer's right to recover over against the husband. That decision authorized a wife to accomplish indirectly that which she could not, under the rule of Rogers and Willott, do directly. The instant significance of that decision is that it clearly indicates that this court must have there recognized that there were no considerations of public policy weighty enough to prohibit a wife's suit against her husband for a personal tort even though committed during marriage. This must be a correct interpretation of that case because the same public policy reasons would apply whether the recovery against the husband was direct or indirect.

▉ It is not apparent to us that the maintenance of an action by one spouse against the other for an antenuptial personal tort would disrupt domestic tranquillity any more than do permitted actions between spouses based on wrongful acts affecting their separate property. And if the domestic tranquillity is to be disturbed, such is accomplished by the desire to recover as fully as by recovery. The danger of fraudulent and trivial claims is no more

real than that danger in litigation between other parties, and the courts and juries are as able to deal with trivial, fraudulent, and fictitious claims between spouses as well as with such claims between other litigants. The fact that an injured spouse has recourse to the criminal and divorce courts is but to point out that for injuries due to spousal negligence there is no remedy. And it would seem apparent that the cost of liability insurance should not determine the presence or absence of a legal right any more than should the fact of the existence of liability insurance in a given case cause liability where it does not exist. See: Brown v. Gosser, Ky., 262 S.W.2d 480, 484 [3]; Fiedeer v. Fiedeer, 42 Okl. 124, 140 P. 1022, 52 L.R.A.,N.S., 189; Courtney v. Courtney, 184 Okl. 395, 87 P.2d 660; 43 Harv.L.Rev. 1030, 1050–1054.

Our conclusion is: that Section 451.250 should be construed as authorizing a wife to maintain an action against her husband for a personal tort committed by him prior to their marriage; that if that section does not contain specific authority for the wife to maintain such an action, any reasons for the existence of the common-law rule that premarital claims are extinguished by marriage has ceased to exist and that rule is, therefore, not applicable in the instant case; and that there are no matters of public policy which should or do cause this court to judicially declare that existing spousal disability by reason of Rogers and Willott to maintain an action for personal tort occurring during coverture should be extended to prohibit the maintenance of an action by one spouse against the other to recover for an antenuptial personal tort.

We need not and we do not express an opinion on the question of whether a re-examination of the validity of the law established in Rogers and Willott would result in a departure from the further application of the law of those cases; or on the corollary question of whether such a re-examination would cause us to conclude that the "public policy" involved in the doctrine of stare decisis outweighed the

·desirability of a judicial rather than a legislative declaration of a public policy contrary to that inherent in the Rogers and Willott cases. Our holding herein is limited to the factual situation involved in the ·instant case.

It follows that the judgment of the trial court is reversed and the case remanded.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.