June Pogue BERRY, Plaintiff-Respondent,

v.

Victor L. HARMON and Roy Eugene Berry,
Defendants-Appellants.

No. 46994

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1959.

See also 323 S.W.2d 691.

Hartman, Guilfoil & Albrecht, E. C. Albrecht, Jr., James L. Homire, Jr., St. Louis, McClintock & Medley, Flat River, for appellant Victor L. Harmon.

Roberts & Roberts, J. Richard Roberts, Farmington, for appellant Roy Eugene Berry.

Schnapp & Cooper, Fredericktown, Jackson & Thomasson, Jackson, for respondent June Pogue Berry.

DALTON, Judge.

Action for damages for personal injuries sustained in a collision between two automobiles, in one of which the plaintiff was riding as a guest. Verdict and judgment were for plaintiff for $25,000 and against the operators of the respective automobiles. Defendants have appealed from the judgment entered against them.

The collision occurred about 9 p. m., November 2, 1954, on U. S. Highway 67, about one mile north of Fredericktown and five or six hundred feet north of a bridge over Village Creek. At the point of the collision and for some distance north and south, the highway was straight and level. It was paved with concrete approximately 20 feet in width and had broad earth

shoulders on each side. The weather was clear and the pavement dry.

Plaintiff, an unmarried female minor, was riding as a guest passenger in a 1949 Chevrolet coach operated by defendant Roy Eugene Berry with whom she was keeping company. They were married subsequent to the date of the collision in question and prior to the date of the institution of the present action. On the occasion in question they were traveling north on the highway, intending to go to Flat River, when the Chevrolet collided with a southbound 1950 Ford club coupe owned and operated by defendant Victor L. Harmon. Defendant Harmon was en route from St. Louis to Poplar Bluff on a hunting trip. All parties were severely injured and plaintiff was rendered unconscious and remained so for 25 days. She had no personal recollection as to how or why the collision occurred. She called the two defendants as her witnesses.

Defendant Harmon testified that, as he was traveling south on his own side of the highway, he first saw the headlights of the Berry car approaching from the south about one-half mile away from him. Harmon's speed was about 50–60 m. p. h. He could not estimate the speed of the Berry car. At that time, the Berry car was apparently in its own traffic lane. As the Berry automobile came off of the Village Creek bridge, when the vehicles were approximately 300 yards apart, the Berry vehicle swerved to Harmon's side of the road and then returned to its northbound traffic lane when the two vehicles were about 200 yards apart. In the meantime, Harmon had slowed to about 50 m. p. h., and he continued driving at about that speed until the collision occurred. When the two vehicles were approximately 100 yards apart the Berry vehicle returned to Harmon's side of the road and Harmon pulled his automobile off onto the west shoulder of the highway. The Berry car crossed Harmon's southbound traffic lane to the west shoulder and Harmon, believing that the Berry car was going to stay on that shoulder, turned back to the pavement, as did the Berry car, and the collision occurred in the middle of Harmon's southbound traffic lane. Harmon had cut back to his left when the Berry car was 30 feet away. Harmon cut to his left a little before the Berry car turned back to the pavement, but the Berry car came back sharp and more abruptly than the Harmon car. Harmon said he told the patrolman that Berry "came over on my shoulder and I had cut back to miss him then we hit." The debris from the collision was on the west side of the highway. The Berry car had crossed to Harmon's side of the road twice or more before the collision. It seemed to Harmon that the Berry car wobbled in its own lane as well as crossed over into Harmon's lane. Harmon had no recollection of applying his brakes at any time. Harmon did not "come to himself" for several minutes after the collision and could not remember what had happened before the collision until after he was being removed to the doctor's office. There was evidence that defendant Harmon (sometime after the collision) said: "I do not remember a thing about the accident." Harmon denied making the statement.

A State Highway Patrolman, who arrived at the scene a few minutes after the collision, found the wrecked 1950 Ford coupe headed to the northwest on the west side of the highway. About one-fourth of the car was off on the west shoulder of the highway. He also found the wrecked 1949 Chevrolet coach lying on its left side in the northbound lane headed back to the south, completely on the east half of the highway. Plaintiff and Berry were both pinned in the car. The two vehicles were approximately 500 feet north of the north end of the bridge over Village Creek. The right side of the Harmon car was about 15 feet south of the front end of the Berry car. There were no skid marks on the pavement. Practically all the glass, dirt and debris were on the northbound lane, that is, on the east side of the high-

way and out on the east shoulder. In the doctor's office Harmon told the patrolman that Berry "was coming up the road weaving back and forth and I didn't think I could miss him by staying on my side of the road so I cut to his side of the road." The frame of the Berry car was sprung to the left.

Defendant Berry testified that when he first saw the Harmon car both cars were on their own respective sides of the highway and approaching each other. He was driving the Chevrolet at about 55 m. p. h. and the speed of the Harmon car was from 70 to 80 m. p. h. When they were close together the Harmon car veered to Berry's side of the highway. Berry tried to brake and swerve to the right but had no time to do so. He tried to, "because Mr. Harmon was on my side of the road coming straight at me." The whole front end of the Harmon car struck the Chevrolet about one foot from the right headlight. The collision occurred on Berry's side of the highway. On two previous occasions Berry, prior to the present trial, had testified that he had no memory of the collision, but four years later and a few weeks before the present trial, his memory suddenly returned as he was passing the scene of the collision. He did not immediately report the matter to his attorney for fear no one would believe him, but later did so. Plaintiff's witnesses, Dr. Lam and Dr. McFadden, testified that such a sudden return of memory was possible and had happened to others. Berry was 17 years of age at the time of the collision, and had drunk about one-half bottle of beer before leaving Fredericktown for Flat River. There was testimony that defendant Berry's breath bore the odor of beer at the scene of the collision and the odor of alcohol at the Bonne Terre Hospital, where he was taken in an unconscious condition following the collision. Between 7 and 8 p. m. that evening he had seemed perfectly sober.

■ The cause was submitted against the respective defendants by separate instructions and solely on negligence in operating their respective automobiles at a high and dangerous rate of speed under the facts and circumstances then and there existing and in failing to drive and operate the automobiles as close to the right-hand side of the highway as practicable. These assignments of negligence were submitted in the conjunctive. All other theories of negligence pleaded or supported by evidence were thereby abandoned. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 93(1); Quinn v. St. Louis Public Service Co., Mo.Sup., 318 S.W.2d 316, 323(16).

Instruction No. 10, requested by plaintiff, further instructed the jury as follows: " * * * if you find and believe from all the evidence and under the other instructions of the Court that the negligence, if any, of Defendant Berry, and the negligence, if any, of Defendant Harmon, directly concurred, combined and contributed to cause said collision and plaintiff to sustain injury, then it would be your duty to return a verdict in favor of the plaintiff and against both defendants *because if both defendants were negligent in any respect submitted to you in these instructions,* and if that negligence directly contributed to cause injury to plaintiff, then neither defendant, even if less negligent than the other defendant, could make use of the concurring negligence of the other to defeat the claim of the plaintiff against the other defendant * * *." (Italics ours.)

Appellant Harmon contends that the court erred in overruling his motion for judgment notwithstanding the verdict, because plaintiff failed to make a submissible case against this defendant under either of the theories of negligence submitted. He insists (1) that there was no duty resting on him to operate his automobile as close to his right-hand side of the highway as practicable, since the statute imposing that duty was repealed prior to the collision; and (2) that there were no facts in evidence to make a submissible case against

him on the issue of negligence in operating his automobile at a high and dangerous rate of speed at the time of the collision.

As stated, plaintiff was injured November 2, 1954. Section 304.020(2) RSMo 1949, V.A.M.S., containing the "as close to the right-hand side of the highway as practicable" rule had been repealed and a new section enacted. Laws 1953, p. 587. The repeal became effective August 29, 1953. The new Sections 304.014 and 304.015 RSMo (Laws 1953, p. 587) V.A.M.S., provided: "Every person operating or driving a vehicle upon the highways of this state shall observe and comply with the following rules of the road. * * * Upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:" (The exceptions are not applicable under the facts here.) We agree that at the time of the collision in question the law imposed no duty on defendant to drive and operate his automobile as near to his right-hand side of the highway as practicable; and that no recovery could be had by plaintiff against defendant Harmon on any such theory of negligence. However, the plaintiff's Instruction No. 1 attempted to submit against defendant Harmon, as a further basis for recovery of damages, "that defendant Harmon carelessly and negligently drove and operated said automobile at a high and dangerous rate of speed under the facts and circumstances then and there existing." In determining whether or not a submissible case was made for the jury on this issue, we must consider the evidence from a viewpoint most favorable to the plaintiff and give plaintiff the benefit of every reasonable favorable inference which the evidence tends to support. Petty v. Kansas City Public Service Co., 354 Mo. 823, 191 S.W.2d 653, 654(1); Wright v. Osborne, 356 Mo. 382, 201 S.W.2d 935, 937(1). Whether a particular speed, not unlawful by reason of statute or ordinance, is excessive depends upon the condition of the highway and all the surrounding circum-

stances and conditions existing at the time. Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114, 118(9, 10); Wood v. Claussen, Mo.App., 207 S.W.2d 802, 809(4, 5); Ritchie v. Burton, Mo.App., 292 S.W.2d 599, 604.

In support of the contention that no case was made for the jury on the issue of negligent speed, appellant cites Pitts v. Garner, Mo.Sup., 321 S.W.2d 509, 514, 516, where this court on the review of a case tried without a jury, weighed the evidence and found as a fact that defendant was not guilty of negligence in operating his automobile "at a high, dangerous and excessive speed, to-wit: a speed of 50 miles per hour for a distance of more than one-half mile prior to the entering of the intersection," as charged in the petition. In that case this court said: "The issue of liability in this case is not to be confused with the issue of submissibility." Since we are here concerned with the issue of submissibility and not liability we are not materially aided by the case cited.

Appellant Harmon insists that, under the good driving conditions surrounding him on the night in question, prior to "Berry's fatal swing across the highway," evidence that he was driving at 50–55 miles per hour was insufficient to make a case for the jury on excessive speed. We think a submissible case was made. Plaintiff was entitled to the benefit of witness Berry's testimony that defendant Harmon was driving at a speed of 70–80 m. p. h. up to the very moment of the collision. Plaintiff was also entitled to the benefit of Harmon's favorable testimony that he saw Berry's car wobbling on both sides of the center line of the highway and crossing over to the west side twice or more within the last 300 yards before the collision, but that he, Harmon, continued to drive at substantially the same rate of speed as he had been driving. In view of the admitted circumstances which confronted him, the jury could well find that he was operating his automobile at a high, dangerous and

negligent rate of speed under the facts and circumstances existing at the time of the collision and that such negligent speed contributed to cause the collision and plaintiff's injuries. Snyder v. Jensen, Mo.Sup., 281 S.W.2d 802, 807; Shepard v. Harris, Mo.Sup., 329 S.W.2d 1; Johnessee v. Central States Oil Co., Mo.App., 200 S.W.2d 383, 388; Smith v. Weilbacher Truck Service Co., Mo.App., 35 S.W.2d 996, 997; Llywelyn v. Lowe, Mo.App., 239 S.W. 535, 537(1).

There is no contention by appellant Berry that a jury case was not made against him on the issue of negligent speed. However, in view of Berry's own testimony that he was operating the Chevrolet at a speed of 55 m. p. h. and in view of defendant Harmon's testimony that the Berry car was wobbling on its own side of the highway and had repeatedly and apparently needlessly crossed over the center line to the left side of the highway at night and in the face of approaching traffic a case was made for the jury on the issue of negligent speed.

Appellant Berry contends that the court erred in overruling his motion to dismiss the cause as to him, because it was admitted that he had married the plaintiff after the date of the collision and injuries and prior to the institution of the action; and that he and plaintiff were husband and wife. Appellant insists that plaintiff cannot maintain an action in tort against her husband. Plaintiff was injured, as stated, on November 2, 1954, she married defendant Berry in May 1955 and the cause was first instituted by her father, as her next friend on her behalf, on December 10, 1956. She subsequently became of age and filed an amended petition in her own behalf on February 7, 1958.

In Brawner v. Brawner, Mo.Sup., 327 S.W.2d 808, decided by Court en Banc on September 14, 1959, in conformity with the decisions in Rogers v. Rogers, 265 Mo. 200, 177 S.W. 382 and Willott v. Willott, 333 Mo. 896, 62 S.W.2d 1084, 89 A.L.R. 114, this court held that a husband cannot maintain a civil action for damages against his wife for personal injuries resulting from negligent acts committed by the wife during the marriage; and that if public interest requires a change in the declared public policy as evidenced by this court's construction of the relevant statutory enactments as construed in Rogers v. Rogers, supra, and Willott v. Willott, supra, the change should be made by the Legislature. Thereafter, in Deatherage v. Deatherage, Mo.Sup., 328 S.W.2d 624, Division One of this Court approved the trial court's dismissal of a wife's action against her husband for damages for personal injuries which she alleged were sustained as a result of her husband's negligence, while they were husband and wife, in the operation of an automobile in which she was a passenger. Respondent, however, relies upon Section 451.250 RSMo 1949, V.A.M.S. and upon Hamilton v. Fulkerson, Mo.Sup., 285 S.W. 2d 642 and Ennis v. Truhitte, Mo.Sup., 306 S.W.2d 549, decisions of this division which were not questioned in Brawner v. Brawner, supra, but were referred to as being based upon special circumstances.

In the instant case the negligence submitted as causing the collision and injury and the cause of action sued on predated the marriage of plaintiff and defendant Berry. The cause of action sued on arose prior to the marriage and existed at the time of the marriage. In the case of Hamilton v. Fulkerson, supra, the cause of action for a personal tort arising from the defendant's negligent operation of an automobile resulting in physical injuries to plaintiff arose prior to the marriage of the parties, however, the action based thereon was instituted in that case two days before the marriage of plaintiff and defendant. This court held that the wife was entitled to maintain the action against her husband for the antenuptial personal tort regardless of the subsequent marriage of the parties. The case before us differs only in this that this case was instituted after the marriage,

rather than before, and was not pending at the time of the marriage.

In Hamilton v. Fulkerson, supra, 285 S.W.2d 642, 644, the court said: "Here, however, we are dealing with a personal tort committed by a spouse prior to marriage and consequently Section 451.250 may be pertinent. That section, Section 451.250 provides in pertinent part that 'any personal property, including rights in action, belonging to any woman at her marriage, * * * shall * * * be and remain her separate property and under her sole control, * * * and any such married woman may, in her own name and without joining her husband, as a party plaintiff institute and maintain any action, in any of the courts of this state having jurisdiction, for the recovery of any such personal property, including rights in action, as aforesaid, with the same force and effect as if such married woman was a femme sole * * *.'

"There can be no doubt that 'rights in action,' as used in the foregoing section, includes any cause of action which was the property of a wife at the time of her marriage. Thus, when JoAnn's cause of action came into being, she was single and unmarried. That cause of action remained her separate property to be thereafter dealt with by her as if she were unmarried. If we were construing the meaning of the foregoing section, uninfluenced by the rationale of the statutory construction employed in Rogers and Willott, and uninfluenced by the results reached in other jurisdictions on facts identical with those of the instant case, we should have no doubt that Section 451.250 authorizes a married woman to sue her husband for a personal tort committed by him prior to their marriage. The language of the statute seems broad and plain. It provides that a woman's personal property, which, of course, includes a cause of action, owned by her at the time of her marriage, is to be and remain her separate property and under her sole control and that she may maintain *any action* for the recovery of that personal property as if she were unmarried. * * * *"

Since the personal tort in the instant case was not committed during the coverture of the parties but, as stated, prior to the marriage, we hold, on the authority of the Hamilton case, that the action can be maintained and it is immaterial that it was not instituted prior to the marriage. The court did not err in refusing to dismiss the action as to defendant Berry.

Appellant Harmon further contends that the court erred in giving Instruction No. 1 directing a verdict against him in the event the jury found that, at the time and place in question, he "carelessly and negligently drove and operated said automobile at a high and dangerous rate of speed, under the facts and circumstances then and there existing, and * * * carelessly and negligently failed to drive and operate said automobile as close to his right hand side of said highway as practicable * * *." He contends that the second quoted portion of this instruction imposed a greater duty on this defendant than that imposed by law; that the first assignment quoted failed to hypothesize material and essential facts and circumstances essential to a valid submission of negligent speed; and that, since a portion of the instruction contained "an improper and positive misdirection of law," the instruction was prejudicially erroneous. Instruction No. 2 was identical to Instruction No. 1, except that it submitted a finding against defendant Berry, who, as appellant, complains of Instruction No. 2 in the same manner that appellant Harmon complains of Instruction No. 1. We shall consider the assignments together.

As hereinbefore stated, at the time of the collision in question, the law imposed no duty on the operator of a motor vehicle to drive and operate his automobile "as near to his right-hand side of

the highway as practicable" and no recovery could be had on any such theory. Respondent, however, insists that in view of the evidence in the record a jury could find that one or both defendants failed to drive on his own "right half of the roadway" and that the instruction was not prejudicial. Section 304.015 supra. Respondent further contends that Instruction No. 2 was not erroneous or prejudicial as to appellant Berry because, after defendant Berry had objected to the court's giving of Instruction No. 2 and had been overruled, he undertook to meet the situation by requesting the court to give Instruction No. 5, a converse instruction directing a verdict for defendant Berry; and that defendant Berry thereby adopted the same theory of law, waived any error and may not now complain, citing Mueller v. Holekamp, Mo.App., 260 S.W. 118, 121; Glowacki v. Holste, Mo.Sup., 295 S.W.2d 135, 138. The rule of waiver contended for does not apply here. Defendant Berry could make the best of the situation into which he was forced by the court's ruling and yet have a right to complain. Beckwith v. Standard Oil Co., Mo.Sup., 281 S.W.2d 852, 856 (8); Mt. Vernon Car Mfg. Co. v. Hirsch Rolling Mill Co., 285 Mo. 669, 227 S.W. 67, 74(6); Moore v. Dawson, 220 Mo.App. 791, 277 S.W. 58, 61(12). Respondent further insists that there is no conflict in the evidence as to the speed at which defendant Berry was operating his car and that no hypothesization of speed and circumstances were required. Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 977(9). While such is true of speed it is not true of the attendant circumstances. Respondent also cites Block v. Rackers, Mo.Sup., 256 S.W.2d 760, 763; Dooley v. Dooley, Mo.App., 290 S.W.2d 856, 859 and Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500(2). These cases do not aid respondent against Berry, since the evidence in this case was conflicting as to existing circumstances. Defendant Berry said that he at all times was on his own side of the road

and that his automobile was in good operating condition, while defendant Harmon said the car was wobbling on its own side of the road and was repeatedly crossing over on to its left side of the road and going back while facing approaching traffic.

■ Respondent makes a similar contention in support of Instruction No. 1 submitting the case against defendant Harmon but, again, the evidence as to defendant Harmon was conflicting both as to the speed of operation and the circumstances existing at the time, all as hereinbefore set out. Respondent further contends that, in view of the evidence, the second part of the instruction required the plaintiff to assume the burden of proving a greater degree of negligence on the part of the defendant Harmon than the minimum prescribed by statute and further imposed a lesser duty on the defendant Harmon in the operation of his automobile than prescribed by statute; and that the instruction was not prejudicially erroneous. Respondent cites Palmer v. Lasswell, Mo. App., 267 S.W.2d 492, 496(8) where it said "It is well established that the giving of an instruction broader than the petition, which submits in the conjunctive an additional ground for negligence or issue not essential to plaintiff's recovery, does not constitute reversible error and that defendant will not be heard to complain thereof on appeal, since defendant is not prejudiced by plaintiff thereby having assumed an unnecessary and additional burden." And see Henderson v. Dolas, Mo.Sup., 217 S. W.2d 554, 557. The rule stated is not applicable under the facts here.

■ We think that Instruction No. 1 and No. 2 were prejudicially erroneous and particularly so in view of Instruction No. 5. Each instruction submitted a false ground of negligence based upon a statute that had been repealed. An undue burden was imposed upon the defendants. Neither defendant testified that he was driving as

close to the right-hand side of the highway as practical at the time of the collision. The instructions do not fall within the "harmless error rule of conjunctive submissions" stated in Beahan v. St. Louis Public Service Co., 361 Mo. 807, 237 S.W. 2d 105, 107; and Palmer v. Lasswell, Mo. Sup., 287 S.W.2d 822, 827(2–4). We think the instructions are properly governed by the rule that, if one of the grounds of negligence is false and constitutes an improper statement of the law and a positive misdirection, the error may not be considered to be harmless and non-prejudicial merely because the false ground is submitted conjunctively with a ground of negligence that is properly submitted. Beahan v. St. Louis Public Service Co., supra, 237 S.W.2d 105, 107; Glowacki v. Holste, supra, 295 S.W. 2d 135, 140; Fitzpatrick v. St. Louis-San Francisco Ry. Co., Mo.Sup., 300 S.W.2d 490, 498; Wilson v. Kansas City Public Service Co., Mo.Sup., 291 S.W.2d 110, 117; Bowman v. Heffron, Mo.Sup., 318 S.W.2d 269, 275. Negligent speed was also submitted without proper hypothecation of facts. Levin v. Caldwell, Mo.Sup., 285 S. W.2d 655, 660(5, 6); Hooper v. Conrad, supra, 260 S.W.2d 496, 500(2).

Both appellants assign error on the admission in evidence of plaintiff's Exhibit No. 9, an exhibit identified as a normal electroencephalogram made by the doctor (witness) of a patient which was an adult of approximately the same age as plaintiff, "* * * an eight channel recording, showing perfectly normal activity." The exhibit was presented for the purpose of permitting the doctor to make a comparison and illustrate his testimony with reference to his findings concerning the abnormal condition of plaintiff's brain, abnormalities and brain damage, as shown by an electroencephalogram taken of plaintiff by the witness. Electroencephalograms of different persons vary to some extent according to the age, sex and general intelligence level of the particular person examined. Appellant Harmon insists that the exhibit

had no probative value and served only to confuse and impassion the jury; and that no proper foundation was laid for its admission in evidence. Appellant Berry says there was no evidence that the exhibit was "a normal tracing for this plaintiff prior to her accident" and, therefore, that it was not relevant and its admission was error.

 Apparently, the exhibit was never offered or received in evidence. Appellants have indicated no page of the transcript showing it to have been offered or received in evidence and we have found no such record. It was identified and exhibited to the jury and later objected to and still later, over objection, it was used by the witness for comparison and illustration of his testimony. Appellant Berry particularly complains of its use for comparison and of its being exhibited to the jury, "when no proper foundation had been layed for the introduction of the exhibit." Appellant Berry cites 31 C.J.S. Evidence, § 159, p. 866. Respondent cites 32 C.J.S. Evidence, § 712, p. 615. We shall consider the exhibit as offered and received in evidence, since respondent does not question its alleged admission. We find no abuse of the court's discretion in permitting its introduction and use by the witness to illustrate his findings concerning plaintiff's abnormal brain condition and damage by making a comparison of the electroencephalogram taken of plaintiff, with that of another person, where the witness said the recording taken from such other person showed the operation of, or waves from, a perfectly normal brain of a person of the same age. See 98 C.J.S. Witnesses § 327, p. 28; 32 C.J.S. Evidence § 712, p. 615; Carnine v. Tibbetts, 158 Or. 21, 74 P. 2d 974; Posner v. New York Life Ins. Co., 56 Ariz. 202, 106 P.2d 488, 492(11, 12). Our ruling on this assignment disposes of another assignment with reference to the use by an expert witness of pictures of a normal female pelvis to illustrate and explain his testimony. And see Dabareiner

v. Weisflog, 253 Wis. 23, 33 N.W.2d 220, 223(7), 12 A.L.R.2d 605.

◼ Appellant Harmon further assigns error on the admission in evidence of plaintiff's Exhibit No. 25 on the ground that it is a gory and bloody photograph of the interior of the automobile in which plaintiff was a passenger; that it had a natural tendency to arouse the sympathy of the jury for plaintiff; and that it constituted no evidence tending to prove or disprove any issue in the case. It was allegedly offered for the purpose of showing the force of the impact between the two automobiles, a basis for plaintiff's injuries, and the place where the heads of the occupants of the Berry car were wedged after the accident. It vividly shows the damaged interior of the automobile evidencing a terrific impact and also shows blood stains in the car top. Appellant says that the force and violence of the collision was sufficiently shown by defendants' and plaintiff's other photostatic evidence; that Exhibit No. 25 did not tend to make any such proof; and that the exhibit was not relevant to any issue involved and should have been excluded. We do not agree. The exhibit was admitted prior to much of the other mentioned evidence. The trial court examined the exhibit and could see no valid objection to its admission and held it to be relevant and properly admissible. The fact that plaintiff had other pictures which also tend to show the force of the collision did not make the admission of the exhibit error. We do not consider the exhibit so inflammatory as to indicate any abuse of the court's discretion in admitting the exhibit. The assignment is overruled.

Various other alleged errors have been assigned, but they are not likely to re-occur in the event of another trial and may be disregarded.

For the errors noted, the judgment is reversed and the cause remanded.

All concur.