Judy Linn BRENNECKE, by her next friend, Ray Jesse Brennecke, and Ray Jesse Brennecke, Appellants,

v.

Billy KILPATRICK, Administrator of the Estate of Juanita Brennecke, Deceased, Respondent.

No. 47577.

Supreme Court of Missouri,

En Banc.

June 13, 1960.

Frederick E. Steck, Sikeston, for appel·lants.

Oliver & Oliver, by Allen L. Oliver, Cape Girardeau, for respondent.

ELMO B. HUNTER, Special Judge.

This is an action for personal injury. In Count One recovery is sought in the sum of $9,600 for Judy Linn Brennecke, a six year old minor, by her father, Ray Jesse Brennecke, as next friend. In Count Two Ray Jesse Brennecke is suing for $5,000 for the medical and hospital bills and impaired value of the services of Judy, his unemancipated daughter.

According to the petition, Ray Jesse Brennecke and Juanita Brennecke were husband and wife and Judy Linn was their daughter. They resided in the State of Oregon. Mrs. Brennecke and Judy were visiting relatives in Bollinger County, Missouri. While so visiting on September 14, 1956, Mrs. Brennecke was driving a 1949 Chevrolet automobile with Judy as a passenger, and the car collided with a gravel truck instantly killing Mrs. Brennecke and injuring Judy.

On October 20, 1958, Billy Kilpatrick was appointed administrator of the estate of Mrs. Brennecke by the Circuit Court of Lane County, Oregon. This suit is against the named administrator. Service was obtained under the "Long Arm" statute.

The trial court sustained defendant's motion to dismiss and dismissed the petition

with prejudice on the ground "that an unemancipated minor child cannot recover against its parent where the action is based on negligence."

More precisely stated, and as presented by the parties, the question raised on this appeal is whether a minor child by next friend can successfully sue the estate of her deceased parent in tort for the alleged negligence of that parent in the operation of an automobile resulting in the death of the parent and injury of the child.

This precise question is one of first impression in this court.[1] Other jurisdictions have found it to be a difficult one, and there is considerable controversy as to the proper rule. A survey of their opinions will serve to illustrate the various considerations pro and con on the subject.[2]

At the outset it is to be noted that insofar as is known no English case dealing with the question has ever been reported.

In this country prior to 1891 only three cases covering tort liability of parents and persons in loco parentis had appeared. They gave support to a liability result, at least as applied to cases of gross neglect, unreasonable punishment inflicted, mistreatment amounting to cruelty or constituting a public offense. Annotation, 19 A.L.R. 2d 425.

In 1891 a Mississippi case appeared holding an unemancipated minor could not maintain against her (living) mother an action for false imprisonment because "the peace of society, * * * and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent." Hewlett v. George, 68 Miss. 703, 9 So. 885, 887, 13 L.R.A. 682.

Although exceptions and distinctions have been made the Mississippi case has been generally followed by most of the courts of this country that have ruled on the subject. 67 C.J.S. Parent and Child § 61, pp. 787–790; 39 Am.Jur., Parent and Child, § 90, p. 736. In Baker v. Baker, 364 Mo. 453, 263 S.W.2d 29, we held that an unemancipated child could not maintain a suit against its living parent based on mere negligence in backing his automobile so as to strike and injure the child.

██ The rule is not an absolute one as indicated in the Baker case, but generally exists or is adhered to only when the court concludes that to hold otherwise would seriously disturb the family relations and thus be contrary to public policy. The immunity of the parent usually has been predicated upon the premise that to allow such an action against a parent would either disrupt the tranquility of the domestic establishment or subvert parental control and discipline.

Nor is the rule without its numerous and serious critics. Prosser, Law of Torts, (2nd Ed.) § 101, pp. 676–77, states: "The courts which deny the action have relied heavily on the analogy of husband and wife, which seems quite inapplicable because of the difference in the common law concept of the relations, and the absence of statutes to be construed. In addition, they have invented much the same variety of unconvincing reasons as in the case of the marital relation. The danger of 'fraud' has been stressed, although it is difficult to see why it is any greater, as between the parties

1. See Brawner v. Brawner, Mo.Sup., 327 S.W.2d 808, holding that a husband cannot maintain an action against his wife for personal injuries caused by the wife's negligence in the operation of her automobile because of the common law rule of immunity, and, Deatherage v. Deatherage, Mo.Sup., 328 S.W.2d 624, wherein conversely we held a wife could not maintain a suit against her husband for injuries she sustained through her husband's negligent operation of an automobile in which she was a passenger.

2. See, Annotation: Infant—Tort Action Against Parent, 19 A.L.R.2d 425.

themselves, than in any other tort action involving an infant; and likewise the possibility that the defendant might inherit the amount recovered in case of the plaintiff's death, or that the family exchequer might be depleted at the expense of other children —neither of which reasons seems to outweigh the desirability of compensating the injured one for his damage. But again, as in the case of husband and wife, the chief reason offered is that domestic tranquillity and parental discipline and control would be disturbed by the action—and again on the theory that an uncompensated tort makes for peace in the family and respect for the parent, even though it be rape or a brutal beating, and even though the relation itself has been terminated by death before the suit. On this basis the action has been allowed where the child has been 'emancipated' by the parent's surrender of the right to his earnings and services, and to parental control. But none of these arguments has been held sufficient to bar an action by or against an unemancipated minor where property is involved, although they are all equally applicable in such a case; and an action for a personal tort has been permitted between minor brother and sister." See, also, Annotation, Infant, Tort Action Against Parent, 122 A.L.R. 1352; Note, 64 Harv.L.Rev. 1208; Annotation, 19 A.L.R.2d p. 432; Annotation, Parent, Tort Action Against Child, 60 A.L.R.2d 1285; McCurdy, Torts Between Persons in Domestic Relation, 43 Harv.L.Rev. 1030; Brawner v. Brawner, Mo.Sup., 327 S.W.2d 808, 816 (Dissent).

As indicated, many who adere generally to the rule recognize some exceptions, such as when the tort was intentional and aggravated or brutal, or there is involved an additional relationship beyond that of parent and child, such as master and servant, or carrier and passenger. Annotation, 19 A.L.R.2d loc. cit. 433–434; Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218. For basically there is a feeling that injustice results from a broad and complete application of the doctrine of parental immunity as a bar to any suit against a parent for a personal injury to a child.

This court in Ennis v. Truhitte, Mo.Sup., 306 S.W.2d 549, 550, had before it a suit by a wife, a minor, against the administrator of the estate of her deceased husband for injuries she received resulting from the operation of an automobile in which she was a passenger and her husband was the driver. The action was in two counts, the first seeking damages for negligence in the operation of the automobile and the second seeking damages because the husband's conduct, in the circumstances, was so " 'gross and reckless' as 'to impute willfulness and wantonness and intentional wrong doing' to him." In ruling that the petition should not have been dismissed by the trial court we said: "In this case, the husband being dead and the action having been instituted against his administrator, the reasons of policy upon which the rule is based, the fact of their being husband and wife, have vanished. 1 Harper & James, Torts, Sec. 8.10, p. 645; Prosser, Torts, Sec. 101, p. 674. Hamilton v. Fulkerson, Mo.Sup., 285 S.W.2d 642, which permits recovery for a pre-marital tort, inflicted two days before the marriage, bites further into the common-law rule and its basic theory than does this case in which there is no longer marital relation to disturb."

In the Ennis case we also stated that: "In the cases involving the liability of a parent for personal torts against a minor child it is said that the true theory of the cases denying the minor's right to recover 'seems to be that of disability to sue the parent rather than absence of violated duty.' Annotation, 19 A.L.R.2d 423, 426. In the Rogers case [Rogers v. Rogers, 265 Mo. 200, 177 S.W. 382], an action for false imprisonment in causing the plaintiff to be confined in an insane asylum, the court did not say that there was no tort; the court, in discussing the married women's acts, said, '* * * we hold that an action for a personal tort com-

mitted by a husband against a wife during coverture cannot be maintained under our statutes.' Rogers v. Rogers, 265 Mo. loc. cit. 208, 177 S.W. loc. cit. 384. In the Willott case [Willott v. Willott, 333 Mo. 896, 62 S.W.2d 1084, 89 A.L.R. 114], a suit for personal injuries sustained in an automobile accident, the court, while purporting to follow the Rogers case, said, 'At common law neither husband nor wife had a cause of action against the other for injuries to his or her person.' Willott v. Willott, 333 Mo. loc. cit. 898, 62 S.W. 2d loc. cit. 1085. In Hamilton v. Fulkerson, supra, the court specifically returned to the quotation from the Rogers case. If there was a tort, even though one spouse could not maintain an action against the other for the wrong, the cause of action, as of course, accrued at the time of injury or when the damage 'is capable of ascertainment' (V.A.M.S., §§ 516.100, 537.100), and so, contrary to the respondent's argument, *there was 'a cause of action in being to survive.'*

"* * * In addition * * * the survival statutes, as indicated, provide that 'Causes of action for personal injuries * * * shall not abate by reason of his death, nor by reason of the death of the person against whom such cause of action shall have accrued.' V.A.M.S. § 537.020. The fact that the following section, V.A.M.S., § 537.030, expressly excludes 'actions for slander, libel, assault and battery or false imprisonment' and does not mention tort actions between husband and wife is of some force and significance." (Italics ours.)

The fact that the act does not mention parent and child likewise is of significance.

In Berry v. Harmon, Mo.Sup., 329 S.W. 2d 784, we held an action could be both instituted and maintained by a wife against her husband after they were married for injuries she received prior to their mar-

riage in an automobile collision caused by her husband's negligence. We there ruled it was immaterial that the action was not instituted until after the marriage and inferentially ruled that public policy did not prevent the maintenance of the suit.

In Hamilton v. Fulkerson, Mo.Sup., 285 S.W.2d 642, 647, we held that a wife may maintain an action for her personal injuries against her husband for an antenuptial tort-negligence in the operation of an automobile. There we said: "It is not apparent to us that the maintenance of an action by one spouse against the other for an antenuptial personal tort would disrupt domestic tranquility any more than do permitted actions between spouses based on wrongful acts affecting their separate property. And if the domestic tranquility is to be disturbed, such is accomplished by the desire to recover as fully as by recovery. The danger of fraudulent and trivial claims is no more real than that danger in litigation between other parties, and the courts and juries are as able to deal with trivial, fraudulent, and fictitious claims between spouses as well as with such claims between other litigants. * * * [T]hat if that section does not contain specific authority for the wife to maintain such an action, any reasons for the existence of the common-law rule that premarital claims are extinguished by marriage has ceased to exist and that rule is, therefore, not applicable in the instant case; and that there are no matters of public policy which should or do cause this court to judicially declare that existing spousal disability by reason of [the] Rogers and Willott [cases] to maintain an action for personal tort occurring during coverture should be extended to prohibit the maintenance of an action by one spouse against the other to recover for an antenuptial personal tort."

In Wurth v. Wurth, Mo.Sup., 322 S.W. 2d 745, while adhering to the general rule that an unemancipated minor cannot sue his *living* parent for his personal injury by reason of an unintentional tort, we held that an emancipated minor could recover from

her father for her personal injuries sustained through his negligent operation of his automobile in which she was a passenger.

■ Thus, in previous opinions we have held that such immunity as a parent may have from suit by a minor child for personal tort arises from a *procedural disability* to sue, usually based on public policy, and not from a lack of a violated duty. This disability is not absolute and the cause of action otherwise existing may be asserted if the reasons for its denial are no longer in existence. In this result we are supported by such decisions from other jurisdictions as Davis v. Smith, D.C., 126 F. Supp. 497, affirmed 3 Cir., 253 F.2d 286; Parks v. Parks, 390 Pa. 287, 135 A.2d 65; Johnson v. Peoples First National Bank and Trust Co., 394 Pa. 116, 145 A.2d 716.

■ In the case before us we rule that a cause of action existed when the alleged negligently inflicted injury occurred and unless prevented from enforcement by public policy by virtue of the survival statutes it can be asserted against the administrator of the mother's estate.

■ It is our view that where an unemancipated minor child by next friend is suing the representative of his deceased parent's estate for his negligently inflicted personal injury by that parent public policy does not prohibit such suit and recovery. The doctrine of intrafamily immunity from such suits expires upon the death of the person protected and does not extend to the decedent's estate for the reason that death terminates the family relationship and there is no longer in existence a relationship within the reasonable contemplation of the doctrine. Although there may be immunity from suit between parent and child during life, the immunity does not extend to the personal representative of the deceased parent. The rationale of the rule of parental immunity has been extinguished by the death of the parent and neither logic nor justice persuades that it remain.

■ What we have said above applies equally to Count Two wherein Ray Brennecke is suing the administrator of his deceased wife's estate. Although there may be immunity of suit between the living spouses the immunity does not extend to the personal representative of the wife's estate.

■ As to Count Two respondent additionally contends that "this suit would permit the husband to collect a second time for medical expenses and loss of earnings of his minor child for which, the record shows, he has already filed another suit and disposed of it." There is nothing in the pleadings that discloses such fact, if it be the fact. As best we can determine, at the time the motion to dismiss was presented to the court, evidence was *offered* in support of the motion by mention of a case No. 2087 allegedly filed in the Circuit Court of Madison County, Missouri, by this father on behalf of himself and as next friend for his daughter Judy against Linus Penzel, Daniel Tinsley and Wilmar Hahn for personal injury damages to Judy and for medical and hospital expenses and loss of services of Judy. The "offered" evidence appears to be someone's written, informal summary of case No. 2087 and is fragmentary. Neither the petition in that case, nor the judgment, nor any other documentary evidence is in the record before us. The trial court did not base its judgment of dismissal on this fragmentary offered material. The record as made and presented in the transcript is insufficient for this court to pass on the question counsel seeks to raise, and we do not pass on it. Cf. Roberts v. Epicure Foods Company, Mo. Sup., 330 S.W.2d 837; Rippe v. Sutter, Mo. Sup., 292 S.W.2d 86, 89; Hamilton v. Linn, 355 Mo. 1178, 200 S.W.2d 69, 71; Metcalf v. American Surety Co. of New York, 360 Mo. 1043, 232 S.W.2d 526.

■ Respondent also urges that this entire action is but a raid on the insurance company, which he suggests is involved, since the deceased wife's estate consists of

assets valued at only $250.00. We deem the presence of insurance immaterial to any issue before us. Cf. Annotation, 19 A.L.R. 2d 423, 435. The question before us is whether the trial court erred in dismissing appellants' petition.

■ Respondent's final contention is that appellants' petition was properly dismissed because of a suit brought *against* appellant Ray Jesse Brennecke for damages growing out of the same accident which suit was dismissed with prejudice as against him upon the execution of a covenant not to sue him nor the legal representative of his wife's estate nor anyone else where liability might "arise out of Policy No. CA185385 * * * issued to [him] and particularly against any of said persons by reason of injuries" from this particular accident, with certain exceptions. Respondent says this was "signed in the presence of and approved by" the attorney for the covenantors who is also the attorney for Ray Jesse Brennecke. We do not understand this to be a covenant by Ray Jesse Brennecke that he will not sue his wife's estate for his damages resulting from the negligent injury of his daughter. However, we do not pass on this contention for it is not one that under the present code may be raised on a motion to dismiss. V.A.M.S. § 509.290.

Our conclusion is that neither public policy, nor lack of a justiciable issue, nor statutory prescription precludes this suit.

Accordingly, the judgment is reversed and the cause remanded with instructions that the petition be reinstated.

## PER CURIAM.

The foregoing opinion by ELMO B. HUNTER, Special Judge, has been adopted as the opinion of the Court En Banc, HYDE, C. J., and WESTHUES, LEEDY, DALTON and HOLLINGSWORTH, JJ., concur.

STORCKMAN, J., concurs in separate opinion.

EAGER, J., dissents in separate opinion.

## STORCKMAN, Judge (concurring).

My views on the general rule of spousal immunity from liability for personal torts are expressed in the Brawner case, 327 S. W.2d 808. The reasons for such immunity between an unemancipated minor child and its parent are similar; the reasons for the exceptions to the rule are also similar in each of these family relations.

The preponderant logic for the execption in Ennis v. Truhitte, Mo., 306 S.W.2d 549, induced my concurrence although cogent reasons remain in such a case for the application of the general rule, a product of judicial decision. As indicated by the dissenting opinion in Ennis, the reasons for the exception in the Hamilton case, 285 S.W.2d 642, are less convincing than in the Ennis factual situation.

Whether family duties and responsibilities in our society have changed and attained a status where public policy demands literal construction of the age-old vow, "until death do us part", is a question that should be considered and determined by the general assembly along with all other aspects of this problem. This determination could be made by the legislative body under the police power on broad considerations of the public good and not by limited adherence to rules of judicial decision.

However, until a majority of the court decides otherwise or the general assembly acts, I will abide by the decision of the court en banc in the Ennis case. Therefore I concur.

## EAGER, Judge (dissenting).

Here a six-year-old minor sues the estate of her mother and the father-husband sues also; both claims are founded upon allegations of simple negligence in an automobile collision, i. e., in failing to exercise the highest degree of care. The mother died

as a result of the collision which injured the child. The majority opinion relies heavily on Ennis v. Truhitte, Banc, Mo., 306 S.W.2d 549. I dissented there and I dissent here.

It has long been the general rule that in the absence of an express statute an unemancipated minor child might not maintain an action against his parent in tort, at least for ordinary negligence. 67 C.J.S. Parent and Child § 61, pp. 787–790; Annotation 19 A.L.R.2d 425; Baker v. Baker, 364 Mo. 453, 263 S.W.2d 29. This has been said to rest upon a "sound public policy * * * and the best interests of society * * *." Hewlett v. George, 68 Miss. 703, 9 So. 885, 887, 13 L.R.A. 682. The Ennis case involved a suit by a wife against her husband's estate, but little, if any, distinction has been made in principle between the two classes of cases. Baker, supra; Willott v. Willott, 333 Mo. 896, 62 S.W.2d 1084, 89 A.L.R. 114; Wurth v. Wurth, Banc, Mo., 322 S.W.2d 745; Rogers v. Rogers, 265 Mo. 200, 177 S.W. 382. We have recently and very definitely reaffirmed the rule that one spouse may not maintain an action against the other for a negligent injury inflicted during the marriage. Brawner v. Brawner, Banc, Mo., 327 S.W. 2d 808. Thus, any direct or indirect criticisms of the general rule of immunity which seem to appear in Hamilton v. Fulkerson, Mo., 285 S.W.2d 642, and in the majority opinion here, should be stilled, at least, for the present. And Brawner would seem to have effectively disposed of the extended arguments to the effect that the Missouri Married Women's Statutes affirmatively gave to the wife a right to sue her husband, and vice versa.

The opinions in Ennis, in Hamilton and in the present case have shown an inclination to restrict this immunity to its most elementary essentials. I think that these opinions are out of harmony with the broad rule announced in Brawner and in its predecessor cases. The immunity springs from a disability imposed by reason of public policy, the underlying reason for which is a

desire to protect the *family* relationship and interests, social and economic. The reason for the rule may extend beyond the death of a wife, or a mother, or a father. In this case a father and at least one child survive; the father proceeds to sue the mother's estate for himself and for a six-year-old child. We shall not elaborate here upon the possible effects of such litigation in a family (disregarding insurance for the moment), the bitterness engendered, the estates destroyed, the relationships disrupted. The evils may depend, in some measure, upon what members of the family remain. The reasons for the rule may often outlive a death.

The majority opinion recognizes the existence of the general rule of immunity in Missouri and elsewhere, but apparently considers the case of Ennis v. Truhitte, supra, as controlling; perhaps it is. Then, partly relying on Ennis, and partly proceeding on its own, the court seizes upon the survival statute, § 537.020, V.A.M.S., as preserving and continuing the tort cause of action against the estate of the wife or mother. We agree (and did in Ennis) that a wrong against a spouse or a child is a tort. We believe, however, that in such a tort as the present one an immediate disability is imposed upon the right of action; that this attaches to the right and that it is permanent in nature. If the right of action survives, it survives only with the disability attached. The present majority opinion, and those in the Ennis case, the Hamilton case, and in Berry v. Harmon, Mo., 329 S. W.2d 784, whittle down the basic rule of immunity announced in Baker, Willott and Brawner. They pay lip service to the rule, but reject it upon distinctions which to me seem more fancied than real. There is no doubt of our power to change a common law rule where necessity and justice demand (State v. Kollenborn, Banc, Mo., 304 S.W.2d 855), and assuming that we do not feel obligated to leave that function to the legislature. But if we are to change it, we should do so forthrightly and abandon the old rule in toto. It is particularly difficult

to reconcile the Hamilton opinion with Brawner; to me there is in it a definite rejection of the basic rule itself, although without attempting to overrule the prior cases specifically. (And see the construction of Hamilton in the dissenting opinion in Brawner, 327 S.W.2d loc. cit. 819.)

No one seems to doubt that there are and should be exceptions to this rule of immunity in flagrant cases involving criminal ·acts, some forms of malice, and perhaps where certain other relationships are imposed upon the family relationship. These may be taken care of as they occur. We are not concerned with such cases here,— but only with a simple, unadorned case of motor vehicle negligence. At least three courts have openly held that the existence of liability insurance, along with the imposition of some additional relationship (such as master and servant or carrier and passenger) removes the reasons for the doctrine of immunity. Worrell v. Worrell, 174 Va. 11, 4 S.E.2d 343, 350; Lusk v. Lusk, 113 W.Va. 17, 166 S.E. 538; Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905, 71 A.L.R. 1055. Missouri has consistently maintained that the existence of liability insurance is wholly immaterial. Baker v. Baker, 364 Mo. 453, 263 S.W.2d 29; Brawner v. Brawner, Banc, Mo., 327 S.W.2d 808; Dille v. St. Luke's Hospital, 355 Mo. 436, 196 S.W. 2d 615. The present case is impregnated with liability insurance, as the majority opinion shows. The courts need not be ignorant of what the general public knows, and certainly the great majority (to put it conservatively) of these inter-family suits are inspired by the existence of insurance. In my opinion it is contrary to human experience to say, as indicated in Prosser on Torts (2nd Ed.), § 101 (quoted in majority opinion), and stated in Hamilton v. Fulkerson, Mo., 285 S.W.2d 642, 647, that "the danger of fraudulent and trivial claims is no more real (in these cases) than   *   * in litigation between other parties * * *." That may depend to some extent on what one considers to be fraud, but when both parties want the plaintiff to win and only the insurance company can lose, the situation is unwholesome and the interests of justice and decency are not served. We have been reaching for distinctions which are without sufficient substance while protesting that the existence of liability insurance is wholly immaterial; I, for one, fear that reasons of expediency engendered by the very prevalent existence of insurance, are playing a major part. Mr. Prosser himself states that the liberalizing of the doctrine of disability has been "encouraged by the presence of liability insurance in automobile cases   *   *   *" (Torts, 2nd Ed., § 101, p. 675). If our rule of disability is to be abandoned, or whittled down to a state of impotency, I think that the legislature should do it. We are now discriminating against wives and children whose husbands and parents happen to survive until the time of suit, in favor of those whose husbands and parents die at the times of common injuries or indeed at any time within the period of the statutes of limitations. The present situation is incongruous and illogical.

I realize that the views expressed here represent a distinct minority of this court. But I remain a "voice crying in the wilderness" against the gradual gnawing away at ·a fundamental principle of sound public policy when the asserted reasons therefor are more artificial than real.

I would affirm the judgment in this case, overrule Ennis and Hamilton, and modify Berry.